MICHELSTETTER, Respondent, vs. WEINER and another, Appellants.

*February 3 — May 24, 1892.*

*Debtor and creditor: Voluntary assignment: Fraudulent conveyances: Statute of frauds: Delivery: Court and jury.*

1. Three mortgages of a debtor's stock of goods, to secure three several claims, were executed on the same day and delivered to the attorney of the mortgagees; and on the next day the goods were turned over to said attorney, either in satisfaction of all the mortgages or in payment of the claim of the third mortgagee (the debtor's father) with the understanding that he would have to pay the two prior mortgages. *Held*, that in either case, as no trustee was appointed or trust created, the transactions did not constitute an assignment for the benefit of creditors within the meaning of sec. 1694, R. S.

2. The question whether such transfers were fraudulent as to other creditors is- *held*, upon the evidence, to have been properly one for the jury.

3. When the goods were turned over to the attorney of the mortgagees, he left the mortgagor in charge, upon a salary, with directions to account to him for the receipts each week. The goods were afterwards attached in an action by other creditors, and the debtor's father, the third mortgagee, sued the officer for conversion, claiming that the goods had been sold to him by the debtor in payment of his claim as above stated. *Held*, that there had been a sufficient delivery of the goods so that the alleged sale was not void under sec. 2308, R. S.

4. Although there had been no delivery and actual change of possession of the goods sufficient to satisfy the terms of sec. 2310, R. S., yet, there being evidence tending to show good faith, the question of fraud in such alleged sale was properly submitted to the jury.

APPEAL from the Circuit Court for *Chippewa* County.

Trover for a stock of books and stationery. The defendant justified as sheriff under a writ of attachment against the property of one Henry Michelstetter and claimed that the stock of goods was the property of said Henry and had been conveyed to plaintiff in fraud of creditors.

It appeared by the evidence that Henry Michelstetter originally owned the stock of goods. On the 22d day of March, 1886, he executed three several mortgages on the property to secure his notes of the same date, viz., one to T. J. Cunningham for $205; one to Arthur Michelstetter, a brother, for $600, subject to the Cunningham mortgage; and one to the plaintiff, *Morris Michelstetter* (father of Henry), for $1,350, subject to the other two mortgages. These mortgages were all delivered at the same time to D. Buchanan, Jr., who was attorney for all of the mortgagees. The mortgages were immediately filed in the proper office, and upon the following day Buchanan demanded payment of the notes, which was refused. Thereupon Buchanan notified Henry Michelstetter that he took possession of the goods under the mortgages. Buchanan testified

that "the result was that Michelstetter turned over the goods to me at that time in satisfaction of the mortgages." Buchanan left Michelstetter in charge of the goods at $50 per month, with directions to account to him (Buchanan) for the receipts every Saturday night until other disposition was made. On the 25th day of March the attachments were levied on behalf of other creditors of Henry, and the goods taken by the sheriff.

At the close of the testimony a special verdict was rendered, as follows: "(1) Was the mortgage offered in evidence given to plaintiff, given in good faith to secure an actual indebtedness from Henry Michelstetter to him? and, if you say 'Yes,' what was the amount of such indebtedness at the time such mortgage was given, to wit, March 23, 1886? *Answer*. Yes; amount of indebtedness $1,350. (2) Was the mortgage offered in evidence given to Arthur Michelstetter and the one given to Thomas Cunningham given in good faith to secure an actual indebtedness to the mortgagees? and, if you answer 'Yes,' what was the amount of such indebtedness to each of such mortgagees on the 23d day of March, 1886? *A*. Yes; indebtedness to Arthur Michelstetter, $600; indebtedness to T. J. Cunningham, $205.29. (3) Did Henry Michelstetter sell the property in question to *Morris Michelstetter* in good faith, without any intent to defraud his other creditors? *A*. Yes. (4) What was the value of the property in question on the 25th day of March, 1886? *A*. $2,000." Judgment was entered for the plaintiff upon the verdict, and the defendants appealed.

For the appellants there was a brief by *Jenkins & Jenkins*, and oral argument by *J. J. Jenkins*. They contended, *inter alia*, that every element necessary to bring the case within the rule of *Winner v. Hoyt*, 66 Wis. 227, was present here. There was (1) a debtor, bankrupt to the knowledge of all the secured creditors; (2) more than one creditor secured, and more than one unsecured; (3) a transfer by the

debtor in trust of all his property, with the intention to prefer certain creditors to the exclusion of others; (4) a trustee provided for the secured creditors.

For the respondent there was a brief by *Dickinson & Buchanan,* and oral argument by *D. Buchanan, Jr.*

WINSLOW, J. The appellants strenuously contend that the transactions between Henry Michelstetter and the chattel mortgagees constitute an assignment for the benefit of a part of his creditors, and that they must be held void, within the rule laid down in *Winner v. Hoyt,* 66 Wis. 227. This contention must fail, because the evidence nowhere shows that any trust was created or trustee appointed either in writing or by parol. This court has held that in order to stamp a transaction of this nature with the character of a voluntary assignment there must be a trust created and a trustee appointed. *Ingram v. Osborn,* 70 Wis. 184; *Cribb v. Hibbard, S., B. & Co.* 77 Wis. 199. Certainly no trust was created by the execution and delivery of the mortgages themselves. It is claimed, however, that a trust was in effect created by virtue of some transactions just after Buchanan took formal possession under the mortgages. The exact nature of these transactions is left in some uncertainty. The attorney who was acting for all of the mortgagees says in his evidence that Michelstetter turned over the goods to him at that time in satisfaction of the mortgages; the stock was turned out in payment of these three notes. But in another part of his testimony he says that it was understood that the goods were to be turned out to *Morris Michelstetter* in payment of his claim, and that *Morris Michelstetter,* in order to protect his mortgage on these goods, *would have to pay* the prior mortgages. Henry Michelstetter testified that he thinks when the goods were turned over the agreement was that his father should pay Cunningham's claim. Whichever version of the transaction

be accepted as correct, it is manifest that no trust was created or trustee appointed. It was simply a transfer of property made absolutely by way of full payment and satisfaction of a debt or debts, and was in the nature of an ordinary conveyance. *Ingram v. Osborn*, 70 Wis. 184; *Greene & B. Co. v. Remington*, 72 Wis. 648.

It is next contended by the appellants that the evidence is so clear that the transfers in question were fraudulent as to creditors that the court should have taken the case from the jury and directed a verdict for the defendant. We shall not undertake to review the evidence in this opinion. It is sufficient to say that in our judgment the question as to whether or not the transfers were fraudulent was properly one for the jury under proper instructions.

The objection that the alleged sale of the goods was void under sec. 2308, R. S., because no note or memorandum thereof was made and no part of the goods delivered, cannot prevail, because there was sufficient delivery of the goods to satisfy the terms of this section. *Janvrin v. Maxwell*, 23 Wis. 51.

It is said (as the fact is) that there was no delivery and actual change of possession sufficient to satisfy the terms of sec. 2310, R. S., and that there is no evidence sufficient to overcome the presumption of fraud raised by that section. A jury would certainly have been entirely justified under the evidence in finding the transaction fraudulent, but there was evidence tending to show good faith, and the court was undoubtedly right in submitting the question to the jury.

Finally, it is claimed by appellants that the special verdict does not cover all the issues in the case. Taken in connection with the charge of the court, which was very full and was not excepted to by appellants, we think the special verdict fairly covers all the controverted questions in the case.

*By the Court.*— Judgment affirmed.