NORTHERN NATIONAL BANK, Appellant,· vs. WEED and another, Respondents.

*September 30 — October 17, 1893.*

*Debtor and creditor: Several instruments held a general assignment with preferences.*

An insolvent firm gave bills of sale, etc., covering the bulk of its property, to officers of banks to which it was indebted, taking back an instrument stating that such bills of sale, etc., were given as collateral securities for the payment of notes made or indorsed by the firm and held by said banks.   The manifest purpose of the transaction being that said bank officers should sell the property and apply the proceeds on the several claims so held by the banks, respectively, *pro rata*, it is *held* to have been a voluntary assignment for the benefit of creditors, within the·meaning of sec. 1694, R. S., and void because not executed as therein prescribed and because it gave an unlawful preference.

APPEAL from the Circuit Court for *Ashland* County.

On September 4, 1890, and for some time immediately prior thereto, the firm of A. Weed & Co., composed of the defendants, was hopelessly insolvent. On that day the defendants executed and delivered to Thomas Bardon and Edwin Ellis instruments to the following effect: (1) A bill of sale in the ordinary form, with the usual warranty, and reciting a consideration of $25,000, for all the lumber and lath piled upon the docks of the Bay Shore Lumber Company at Ashland, and all the logs belonging to them situated at the boom of said company at Ashland and the booms of the Ashland Boom & Canal Company on Bad river, marked as therein designated; also (2) a bill of sale in the ordinary form, with the usual warranty, and reciting a consideration of $50,000, for about four and a half million feet of lumber, about two and a half million feet of logs, about two million shingles, about a half million lath, horses, cattle, and general logging outfit at Ramsay, Mich.; also (3) a warranty deed of their sawmill property at Ramsay, therein described; also (4) an assignment of a real-estate mortgage on the sawmill plant of the Bay Shore Lumber Company at Ashland, executed by that company to A. Weed & Co., September 4, 1890, for $12,000.

On the same day, and as a part of the same transaction, said Bardon and Ellis executed and delivered to the said A. Weed & Co. the following instrument, to wit: "Know all men by these presents that the bill of sale executed this 4th day of September, A. D. 1890, by A. Weed & Co. to Thomas Bardon and Edwin Ellis, on logs and lumber in Ashland county, and the bill of sale by *Alfred Weed* and *Paul Weed* for logs, lumber, lath, and shingles, and horses, cattle, and logging outfit on the same date, said property being in Gogebic county, Michigan, both hereto attached, and the deed executed on the same date and between the same parties on the sawmill property at Ramsay, Gogebic

county, Michigan, on the southeast quarter of the north-west quarter of section 13, township 47 north, of range 46 west, and the assignment of the mortgage from the Bay Shore Lumber Company to A. Weed & Co. of $12,000, are given as collateral securities for the payment of notes made or indorsed by said A. Weed & Co., and held by the First National Bank of Ashland and the Ashland National Bank and the Security Savings Bank, all of Ashland, Wisconsin, to the amount of about $65,000."

These various instruments were filed and recorded in the proper offices, September 4, 1890. After the execution and the filing and recording of said several instruments, and on September 4, 1890, the plaintiff began this action against the defendants to recover $10,750, and sued out a writ of attachment pursuant to the statutes, on the ground that the plaintiff had good reason to believe, and verily did believe, that the defendants had assigned, conveyed, disposed of, or concealed, or were about to assign, convey, dispose of, or conceal, their property, or some part thereof, with intent to defraud their creditors. On the same day, under the writ of attachment issued thereon, a large amount of logs and lumber was levied upon.

The defendants, by way of special answer to the said affidavit and writ of attachment, denied the existence of all the material facts stated in said affidavit, except the alleged liability and the amount thereof. The plaintiff elected to take issue with said answer, and at the close of the trial of the issues thus formed the court found as matters of fact that the allegations of said affidavit were not true, and that none of the material facts stated therein existed, except as to the alleged liability of the defendants for the amount thereof; and as conclusions of law the court found that the defendants were entitled to an order delivering the property attached to the defendants, together with the costs of the trial of said issue, taxed at $25; and it was therefore there-

upon ordered that the property attached and described in said writ of attachment and the return and inventory thereto annexed, be forthwith delivered up to the defendants, and that the sum of $25, taxed as costs therein, be applied as a setoff to the plaintiff's demand.

From the order sustaining the traverse of the affidavit for attachment, and from the whole and every part thereof, the plaintiff appeals.

For the appellant there were briefs by *Lamoreux, Gleason, Shea & Wright,* and oral argument by *E. F. Gleason.*

For the respondents there were briefs by *Tomkins & Merrill,* and oral argument by *W. M. Tomkins.*

CASSODAY, J. It is conceded that at the time of executing the several instruments mentioned in the foregoing statement A. Weed & Co. were not indebted to Bardon and Ellis, or either of them, in any sum whatever; that the only connection Bardon and Ellis had with any claim against A. Weed & Co. was that Bardon was president of the Ashland National Bank, and a director in the First National Bank of Ashland, and that Ellis was president of the First National Bank of Ashland, and a director in the Ashland National Bank and in the Security Savings Bank of Ashland, and that A. Weed & Co. were indebted to said several banks in a large amount, as mentioned in said statement, and that the five several instruments mentioned in said statement were made, executed, and delivered for the sole use and benefit of said banks, respectively. It appears that just prior to executing the several instruments mentioned, A. Weed & Co. desired and were about to make a general assignment for the benefit of their creditors, but were dissuaded therefrom by Bardon and Ellis, and instead thereof, and at their suggestion, executed the several instruments mentioned. Those instruments covered the great mass of property belonging to A. Weed & Co., and were

executed for the purpose of giving the. banks named, respectively, a preference over their other creditors. A. Weed & Co. were hopelessly insolvent, and owed such other creditors, in the aggregate, a very large amount; and, if the transaction mentioned is to stand, it is certain that such other creditors can realize but a small per cent., if anything, on their claims. The manifest purpose of the transaction was for Bardon and Ellis to sell the property covered by the bills of sale and' deed, and collect the mortgage, and apply the proceeds thereof on the several claims so held by the banks, respectively, *pro rata.* We are constrained to, hold that the facts bring the case squarely within the rules of law affirmed by this court in *Winner v. Hoyt*, 66 Wis. 227; *Maxwell v. Simonton*, 81 Wis. 635; *Fuller & F. Co. v. McHenry*, 83 Wis. 573. These cases, and several others which are distinguishable, have discussed the principles involved fully and in detail. It is only necessary here to apply the plain language of the statutes to the case. "*All voluntary* assignments or transfers whatever of *any* real estate, chattels real, goods or chattels, rights, credits, moneys, or effects, *for the benefit of or in trust for creditors* shall be *void* as against the *creditors* of the person making the same, unless the assignee shall be a resident of this state," and the assignment is executed as therein required. Sec. 1694, R. S. Had A. Weed & Co. made such an assignment as they at first contemplated, it would, nevertheless, have been absolutely void had it contained or given any preference to one of their creditors over another creditor. Sec. 1693*a*, S. & B. Ann. Stats.; ch. 349, Laws of 1883; and ch. 451, Laws of 1887. A. Weed & Co. cannot be allowed to do by way of indirection and circumvention what the statutes thus prohibited them from doing directly.

The exceptions to the statutory rules thus stated, which from time to time have been sanctioned by this court, have either been cases not coming within the purview of the stat-

utes cited, or where the instrument has been authorized by some other statutory provision; as, for instance, a chattel mortgage. Sec. 2314, R. S.; *Cribb v. Hibbard, Spencer, Bartlett & Co.* 77 Wis. 206; *Michelstetter v. Weiner,* 82 Wis. 298. This distinction was pointed out in *Maxwell v. Simonton,* 81 Wis. 635.

It may be said, as it has often been said in such cases, that this decision will operate to give a preference to an attaching creditor. But this court is not responsible for the anomalous provisions of our statutes on the subject. They manifestly prohibit an insolvent debtor from giving preferences in certain ways, and yet allow him to give preferences in certain other ways. The policy of the law on the subject is for the legislature. This court cannot do otherwise than to declare the law as it is found in the statutes.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with direction to sustain the attachment, and for further proceedings according to law.

PINNEY, J., took no part.