Collins vs. Corwith and another.

COLLINS, Respondent, vs. CORWITH and another, imp., Appellants.

*November 10 — December 15, 1896.*

*Transaction with person since deceased: Debtor and creditor: Lien of judgment over unrecorded mortgage: Fraud: Evidence: Voluntary assignment.*

1. In an action by a creditor to enforce collection of his judgment on real estate of his debtor, upon which the defendants' testator had taken a mortgage which was not recorded until after his death and the entry of the judgment, testimony of the debtor was, under sec. 4069, S. & B. Ann. Stats., incompetent "in respect to any transaction by him personally" with the deceased.

2. The evidence in such a case (showing, among other things, an agreement by C., since deceased, to advance money to L. & B.; the taking of personal security for the advances to be made, on its face ample and sufficient to pay the debt; the taking of a mortgage from L. as additional security; the concealment from record of such mortgage for four years and ten months; L.'s continuing business and trading as though his property was clear; the recording of the mortgage after L. became insolvent; the subsequent transfer of the mortgaged property to C.'s son by deed; and the mortgaging and transfer of all of the other property of L. not exempt), in the absence of an explanation of the failure to record said mortgage, is *held* sufficient to sustain a finding of the trial court that the mortgage was withheld from record because it was believed that to record it would injure L.'s credit, and that it was so withheld pursuant to some agreement of the parties. It was therefore void as to L.'s creditors.

3. Transactions which took place between November 20 and December 3, following, which resulted in the gathering up of all of an insolvent debtor's property by two creditors to pay themselves, with a reversion to the debtor if any property was left, is *held* to have been in effect a voluntary assignment for the benefit of preferred creditors.

APPEAL from a judgment of the circuit court for Marathon county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

This is a creditors' bill to enforce collection of a judgment against J. E. Leahy upon the undivided one half of a mill

plant described, and to set aside a mortgage and a deed by him given thereon, the one dated January 21, 1886, and the the other December 3, 1890. The issue being joined and the trial had, the court found, in effect, the following facts: That from April 17, 1886, to December, 1890, the defendant Leahy was a logger and lumberman, doing a large business in logging and lumbering, with his headquarters and saw-mill plant and equipment at Wausau. That one Beebe owned a one-half interest in the sawmill, and Leahy the other undivided half interest. That during the same time the plaintiff was a hardware merchant at Wausau, and from time to time until November, 1890, extended credit to Leahy in large amounts. That January 21, 1886, Leahy and wife executed and delivered to one Henry Corwith a mortgage of the undivided one-half interest in the mill property to secure the payment of $20,000, all payable before the end of that year, but which mortgage remained unrecorded for nearly five years. That Leahy was at that time quite heavily in debt, and owed Corwith a large sum of money, and that the money secured by such mortgage was needed by Leahy to carry on his business operations, and was advanced by Henry Corwith to him within a period of about six months after the date of the mortgage. That, at the time of giving the mortgage, Henry Corwith, Leahy, and Beebe entered into a contemporaneous written agreement, by the terms of which Henry Corwith was to have a lien upon certain logs and lumber then owned by Leahy and Beebe as security for the same indebtedness mentioned in the mortgage. That the purchase price of said logs and lumber was to be paid to Henry Corwith, and applied in satisfaction of the mortgage debt. That such security was ample and sufficient to pay the indebtedness mentioned in the mortgage. That a considerable amount was realized by Henry Corwith out of such logs and lumber so pledged to him, but the amount cannot be precisely determined from the evidence.

That Henry Corwith died September 15, 1888, testate, leaving *Charles R. Corwith* his sole heir at law, and naming *Charles R.* and *John Corwith* as executors in his will. That said mortgage was not recorded until November 20, 1890. That Leahy was, at that time, owing the plaintiff about $1,600 on account of sales of merchandise, which sum was wholly unsecured. That the plaintiff thereafter took from Leahy a promissory note for the amount of such balance. That, during the time said mortgage was so withheld from record, the value of Leahy's interest in the mill plant was at least $15,000. That the plaintiff had no knowledge or notice of the existence of said mortgage until the same was so recorded. That the plaintiff extended credit to Leahy in the belief that the undivided one-half interest in the mill property owned by him was unincumbered, and that he would not have extended such credit had he known of the existence of that mortgage. That at the time the mortgage was so recorded, and before, Leahy was indebted to the estate of Henry Corwith for between $50,000 and $60,000. That Leahy was then being crowded and embarrassed by his creditors, and was then very much in need of funds, and was also then indebted to various parties, including the plaintiff and one James McCrossen, to whom he was owing a large amount of money, to secure which he had executed to McCrossen a mortgage or mortgages upon his timber lands and logging outfit. That, on the same day of recording said mortgage, Leahy and wife executed to *Charles R. Corwith* a second mortgage on the real estate covered by the McCrossen mortgage, which was recorded November 22, 1890. That December 2, 1890, an agreement in triplicate was entered into between Leahy, McCrossen, and *Charles R. Corwith,* which recites the indebtedness of Leahy to each; the giving of the mortgages on the timber land and personal property; the fact that all parties were agreed that it was advisable that the property should be so handled, and the

operations so conducted, as not to sacrifice the same at
forced sales; that *Charles R. Corwith* should take possession
of all the property of Leahy, carry on logging operations,
handle and sell the proceeds, paying out of said proceeds
certain notes held by McCrossen amounting to $20,500, then
to pay *Corwith* for all moneys advanced to carry on the
business, then to pay the remainder of Leahy's indebted-
ness to McCrossen, and then to pay the remainder of
Leahy's indebtedness to the Corwith estate, and, lastly,
any surplus remaining should be paid to Leahy. That
the wife of Leahy joined in that agreement, which con-
tained a quitclaim deed of all their interest in the real
and personal property described in the several mortgages
mentioned. That the property mortgaged and turned over
to McCrossen and *Corwith* under that agreement covered
all of Leahy's property except his homestead, his undivided
one-half interest in the sawmill plant, and some boom stock
worth about $10,000, which had previously been pledged
to Henry Corwith as security. That the property cov-
ered by that agreement was thought to be enough to pay
the claims of both McCrossen and *Corwith*, and leave a sur-
plus. That that tripartite agreement was not recorded, and
was not intended to be recorded, by the parties. That that
tripartite contract of December 2, 1890, recites the agreement
of January 21, 1886, between Corwith, Leahy, and Beebe, and
admits payment thereon of $15,136.79. That it also recites
certain securities held by *Corwith* for the payment of the
indebtedness named, but neglects to mention the mortgage
of January 21, 1886. That it appears in proof that the de-
fendants *Corwith* have commenced an action against Leahy
to recover about $27,000 claimed to be due them, and in
their complaint they demanded judgment for $8,985.46, as
the balance due upon the contract of January 21, 1886. That
all of Leahy's indebtedness to *Corwith* was mentioned in the
agreement of December 2, 1890, and it was then supposed

that there was sufficient property included therein to pay both McCrossen and *Corwith*, and leave a surplus to Leahy. That December 3, 1890, Leahy and wife executed and delivered to *Charles R. Corwith* a deed of said undivided one-half interest in the sawmill plant for the consideration expressed therein of $15,000, and also transferred to him the boom stock mentioned, the face value of which was $14,000, and for which Leahy was to be allowed seventy-seven cents on the dollar, and Leahy received credit upon his account for those amounts. That at that time it was agreed verbally between Leahy and *Charles R. Corwith* that Leahy should have the right to repurchase such interest in the mill property at the price mentioned. That $15,000 was a fair and reasonable value for such interest. That the deed of the mill property and the transfer of the boom stock was made by Leahy as an inducement for *Corwith* to make the triplicate agreement mentioned, and the reason why it was not included in such agreement separately was because *Corwith* held the mortgage of January 21, 1886. That such deed was given in place of that mortgage, and upon the same consideration as the mortgage. That after the execution of that agreement, McCrossen and *Corwith* took possession of the property of Leahy under said agreement, and continued to manage and operate the business, cutting the logs and running the sawmill and selling the lumber product, and that no settlement between the parties has yet been made. That the execution of the mortgages to *Corwith* and McCrossen, the making of the tripartite agreement of December 3, 1890, the transfer of the boom stock, and the withholding from record of the mortgage of January 21, 1886, and the execution and delivery of the deed of the mill property covered by that mortgage, were all parts of the general transaction entered into by Leahy with *Corwith* and McCrossen to secure them, and give them a preference over other creditors. That it was verbally and orally agreed between Leahy, McCrossen, and

*Corwith*, at the time the various instruments were made in November and December, 1890, that Leahy should have the property returned and deeded back to him upon satisfaction of their several claims, and that such agreement was to be kept secret from the other creditors of Leahy. That at the time of giving them such several instruments, Leahy was owing a considerable amount to other creditors, and was and still is owing such amount, and is insolvent. That Leahy, in November and December, 1890, was very much embarrassed and on the verge of insolvency, and that his financial condition was well known to his codefendants. That after the delivery of the deed, December 3, 1890, and the transfer of the boom stock, none of Leahy's notes or evidences of indebtedness was ever delivered to him by his codefendants. That said mortgage was withheld from record, kept concealed from the other creditors of Leahy including the plaintiff, and not pursued, for the purpose and with the intent on the part of Leahy and Henry Corwith during his lifetime, and thereafter by the defendants *Charles R.* and *John Corwith*, in order that it should not impair the credit of Leahy. That notice of it should not be made public, with the intent and purpose, on the part of said parties, to give to Leahy a fictitious credit through the apparent unincumbered ownership of said mill property; and that other creditors of Leahy should be deceived as to the condition of the property described in the mortgage. That Leahy not having paid the note held by the plaintiff against him for $1,600, the plaintiff brought an action thereon, and recovered judgment against him, May 9, 1892, for $1,600.58, which judgment was duly docketed, and execution duly issued thereon, and the same returned wholly unsatisfied. That no part of the said judgment has been paid, and that there is now justly due thereon $1,600.58, together with interest thereon from May 9, 1892. That this action was commenced May 11, 1892. That on that day the summons and complaint

were filed in the clerk's office, and the notice of the pendency of the action was filed in the register's office.

As conclusions of law the court found, in effect, that the mortgage of January 21, 1886, recorded December 20, 1890, and the record thereof, were null and void as against the plaintiff; that the deed of the undivided one half of the mill property, dated December 3, 1890, from Leahy to *Charles R. Corwith*, and the record thereof, were null and void as against the plaintiff; that the plaintiff's judgment was and is a lien upon the undivided one-half interest in the mill property, to the amount of such indebtedness, and is prior in right and equity to all claim, right, and interest of the defendants, and of all persons claiming by, through, or under them, or either of them, since May 11, 1892; and that the plaintiff is entitled to enforce the same against that property, free and clear and discharged from the claims and rights of all persons claiming by, through, or under the defendants, or any of them, since that date,— and ordered judgment to be entered thereon accordingly. From judgment entered thereon accordingly, the defendants *Charles R.* and *John Corwith*, as such executors, bring this appeal.

For the appellants the cause was submitted on the brief of *Silverthorn, Hurley, Ryan & Jones.*

For the respondent there was a brief by *Brown & Pradt*, and oral argument by *Neal Brown*. They argued, among other things, that the withholding of the mortgage from record, whether so withheld through the agreement of the parties or not, made it constructively fraudulent as to creditors who gave credit to the mortgagor under the belief that he held the unincumbered ownership of the property. *Evans v. Laughton*, 69 Wis. 138; *Blennerhassett v. Sherman*, 105 U. S. 100; *Hungerford v. Earle*, 2 Vernon, 261; *Hildreth v. Sands*, 2 Johns. Ch. 35; *Coates v. Gerlach*, 44 Pa. St. 43; *Hilliard v. Cagle*, 46 Miss. 309; *Hafner v. Irwin*, 1 Ired. Law, 490; *Hildeburn v. Brown*, 17 B. Mon. 779; *Neslin v.*

*Wells,* 104 U. S. 428; *Briggs v. Jones,* L. R. 10 Eq. 92, 98;
*Steele v. Coon,* 27 Neb. 586; *Barker v. Barker's Assignee,* 2
Woods, 87; *Burt v. Timmons,* 29 W. Va. 441; *Fetters v.
Duvernois,* 73 Mich. 481; *Stock-Growers' Bank v. Newton,*
13 Colo. 245; *Goll & Frank Co. v. Miller,* 87 Iowa, 426;
*Jewett v. Sundback,* 5 S. Dak. 111; *Standard Paper Co.
v. Guenther,* 67 Wis. 101; *Liddle v. Allen,* 90 Iowa, 738;
*Falker v. Linehan,* 88 id. 641; *Sanger v. Guenther,* 73 Wis.
354; Bump, Fraud. Conv. § 39; *State Savings Bank v. Buck,*
123 Mo. 141; *Cent. Nat. Bank v. Doran,* 109 Mo. 40; *Adams
v. Curtis,* 137 Ind. 175; *Lehman, Durr & Co. v. Van Winkle,*
92 Ala. 443; *Pendleton v. Hughes,* 65 Barb. 136.

CASSODAY, C. J.   The case turns wholly upon the evidence
and well-established principles of law.   Both parties claim
under J. E. Leahy.   It is true, as contended by the appel-
lants' counsel, that the testimony of Leahy was incompe-
tent "in respect to any transaction or communication by
him personally with" Henry Corwith, deceased.   Sec. 4069,
S. & B. Ann. Stats., and cases cited in the notes.   The trial
court, however, in this equity case, very properly received
such testimony under objection, as it was necessarily more
or less mixed up with competent evidence.   But when the
court decided the case, he said in his written opinion that
"Even if we *exclude* from our consideration the *testimony
of Leahy* as to the agreement not to record, and admit that
neither of the parties had any actual intention to defraud
when the mortgage was given, yet I think, under all the
circumstances in proof, the mortgage became and is fraudu-
lent and void as to the plaintiff.   We have, then, this state
of facts: An agreement by Corwith, deceased, to advance
money to Leahy and Beebe; the taking of personal security
for the advances to be made, on its face ample and sufficient
to pay the debt; the taking of a mortgage from one of the
parties as additional security; the concealment from record

of this mortgage for four years and ten months; Leahy continuing business and trading as though his property was clear; the record of the mortgage after Leahy became involved; no explanation of the failure to record the mortgage; the transfer of the mortgaged property by deed after Leahy became insolvent; the mortgaging and transfer of all of Leahy's property not subject to exemption, with other circumstances mentioned in the proof. What conclusion must every reasonable person arrive at after considering these facts? Simply that the mortgage was not recorded because it was believed that to do so would injure Leahy's business, and that it was so withheld pursuant to some agreement of the parties. Looking at the business conducted by Leahy, and Corwith's knowledge of it, the necessary and inevitable result of withholding this mortgage from record was to give Leahy a false financial standing, and to deceive people trading with him. In law, Corwith must have intended that result, even though actuated by no evil or fraudulent motive. And *Charles R. Corwith* cannot relieve himself from the same imputation, because he held the mortgage over two years as executor and only recorded it when Leahy became insolvent."

A careful examination of the record convinces us that such conclusions of the trial court are amply supported by the evidence, without giving any weight to such incompetent testimony. The trial court was further of the opinion, in effect, that the several instruments and transactions which were made and took place between November 20, 1890, and December 3, 1890, inclusive, as mentioned in the foregoing statement, should be regarded " as parts of one continuous transaction;" that, taking all those transactions together — " the gathering up of all of Leahy's property by McCrossen and *Corwith* to pay themselves, *with a reversion to Leahy* if any property was left, they came very near the border line of the law, if not over it," of making a voluntary assign-

ment for the benefit of preferred creditors, within the repeated rulings of this court. *Winner v. Hoyt,* 66 Wis. 227; *Maxwell v. Simonton,* 81 Wis. 635; *Fuller & Fuller Co. v. McHenry,* 83 Wis. 573; *Northern Nat. Bank v. Weed,* 86 Wis. 212; *Strong v. Kalk,* 91 Wis. 29; *Jameson v. Maxcy,* 91 Wis. 563. Such opinion of the trial court is fully justified by the nature of the instruments and transactions and the evidence. Manifestly, the case comes within the condemnation of these decisions.

*By the Court.*— The judgment of the circuit court is affirmed.