Sweet, Dempster & Co. vs. Neff and others.

SWEET, DEMPSTER & COMPANY, Appellant, vs. NEFF and others, Garnishees; Respondents.

*February 27 — March 14, 1899.*

*Voluntary assignment: Chattel mortgages.*

1. A conveyance or other arrangement by which an insolvent debtor places part or all of his property under the control of another, whether a creditor or not, in trust for the benefit of one or more of his creditors, with or without preferences, constitutes an assignment for the benefit of creditors and is voidable at the election of any creditor not consenting thereto, unless the statutory requisites for the making of voluntary assignments be complied with.

2. Where separate mortgages of the property of an insolvent debtor were given at the same time to several creditors, with an agreement or understanding, evidenced by the writings and by the conduct of the parties, that the first mortgagee should take immediate possession for the benefit of all, convert the property into money, and account therefor to the other mortgagees or their mutual agent, the transaction is *held* to have constituted a voluntary assignment. *Menzesheimer v. Kennedy,* 75 Wis. 411, and *Michelstetter v. Weiner,* 82 Wis. 298, distinguished.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

August 27, 1897, the principal defendants were insolvent merchants having on hand a stock in trade and some store fixtures of the value of some over $2,000 and about $500 in book accounts. Among the creditors of such defendants were plaintiff and the mortgagees hereinafter mentioned. Such mortgagees, each acting independently of the other and knowing of the insolvent condition of such defendants, gave his or its claim to M. H. Eaton, an attorney at law, with instructions to collect or secure it. After receiving such claims, the attorney demanded payment or security, in accordance with his instructions from the creditors. Such defendants thereupon gave such creditors mortgages upon their entire property, each being in form independent of the others. All

the mortgages were made at the same time, in the same place, and in the order the claims were received by the attorney. The first mortgage was given to *W. W. Neff* for $550. That was followed by others in the following order: *E. H. Hicks*, $300; *Commercial Bank of Oshkosh*, $175; *German American Bank of Oshkosh*, $175; *South Side Exchange Bank of Oshkosh*, $240; *Frank A. Leach*, $150.26. The last mortgage covered the book accounts as well as the stock. Each mort- gage contained a provision as follows:

"It is further understood and agreed between the parties hereto that for further security the said ———— ———— shall take, and does take, the actual and full possession of said property and every part thereof, so as to be and become the mortgagee in possession, and it is further agreed that all proceeds de- rived by said second party from sales of any of said property shall be applied to the payment of the aforesaid notes, and said second party shall well and truly account for all money received by him from such sales."

All of the mortgages were filed by the attorney in the office of the city clerk at the same time, but in the order in which they were made. The attorney handled the matter for all of the creditors named, drew the mortgages, obtained the signatures thereto, placed the same on file, obtained cer- tified copies of them preparatory to taking possession of the property, and delivered to *Neff* his copy, who immediately took possession of such property, and that was speedily fol- lowed by a taking possession by the attorney for the other mortgagees in their order. Thereafter, *Neff* sold sufficient of the property to more than cover his claim, then accounted to Eaton, the attorney, as agent for the other mortgagees, who then took absolute control of the property and continued the conversion of the same into money till the whole busi- ness was closed out. The mortgagee *Leach* asserted a right in the meantime to control the book accounts, and made some collections thereon.

After the mortgages were made, and *Neff* had taken possession of the property, and Attorney Eaton had asserted possession thereto subject to the rights of *Neff*, plaintiff commenced an action to recover its claim against the principal defendants, and this garnishee proceeding, summoning all the mortgagees as garnishees. Such garnishees answered separately, putting in issue the claim of the plaintiff as to the invalidity of such mortgages. On the trial the evidence established the *bona fides* of the indebtedness secured by the mortgages, and established the facts substantially as before indicated. There was considerable direct evidence that the mortgages were taken for no other purpose than to recover the indebtedness secured thereby from the principal defendants. The court found the facts as indicated; that the several mortgages were separate and distinct transactions; that there was no concert of action between the mortgagees; that *Neff* acted solely for himself in taking possession of and selling the mortgaged property; and that the mortgages were all valid and the garnishees not liable. Judgment was entered accordingly.

For the appellant there were separate briefs by *Felker, Stewart & McDonald*, attorneys, and *Thompson, Harshaw & Thompson*, of counsel, and oral argument by *F. C. Stewart* and *J. C. Thompson*.

For the respondents there was a brief by *Eaton & Weed*, and oral argument by *H. I. Weed*. To the point that the mortgages, being taken in good faith to secure honest debts, were valid and to be enforced, they cited *Bleiler v. Moore*, 94 Wis. 385; *Koch v. Peters*, 97 Wis. 492; *H. B. Claflin Co. v. Grashorn*, 99 Wis. 356.

MARSHALL, J. The question for decision on this appeal is: Did the mortgages given by Davis & Buckstaff to the garnishee defendants, under the circumstances, constitute an assignment for the benefit of creditors within the decisions

of this court in *Winner v. Hoyt*, 66 Wis. 227; *Strong v. Kalk*, 91 Wis. 29; *Jameson v. Maxcy*, 91 Wis. 563; *Collins v. Corwith*, 94 Wis. 514, and similar cases? The principles of law governing the subject are too well known to require any discussion here. It is the established doctrine that if an insolvent debtor make a conveyance to, or by any arrangement place his property under the control of, another, whether such other be a creditor or not, or whether all the debtor's property be so placed or not, for the benefit of one or more of his creditors, with or without preferences, it constitutes an assignment for the benefit of creditors and is voidable at the election of any creditor not consenting thereto unless the statutory requisites for the making of assignments for the benefit of creditors be complied with. In short, if the transaction combine the elements of assignor, trustee, trust, creditors, and *cestui que trust* who can compel the enforcement of the trust, so that all the common-law requisites of an assignment for the benefit of creditors are present, it will fail at the option of any creditor who may properly challenge its validity, if any material statutory requirement on the subject be violated.

The learned trial court said the facts here do not bring the case within the principles of law above referred to, resting his conclusion largely on *Menzesheimer v. Kennedy*, 75 Wis. 411, and *Michelstetter v. Weiner*, 82 Wis. 298. The former case does not seem to apply. There were two mortgages each given independently of the other to a creditor, without any agreement between the two creditors, or either of them, and the mortgagor to take possession of the property as trustee. Here there was unquestionably an understanding that the property should immediately pass into the possession of the first mortgagee for conversion into money and distribution thereof in the order of the priority of the various mortgages. It in effect so states in the instruments, and the conduct of all the parties is consistent with that view and with no other. The latter case cited does not

seem to have any application to the facts here. The decision turned on the finding that the transfer of the property was absolute, in payment of a debt owing to the vendee and in consideration of his agreeing to pay off the other debts which were secured on the property transferred. The vendee in that case did not become a trustee for the other two creditors, but became their debtor. The essential elements of an assignment for the benefit of creditors did not exist. There was no absolute conveyance of property in this case, and no similarity between the two cases that we can perceive.

If *Neff* became, by agreement of the parties, a trustee for the subsequent mortgagees, then it must be admitted that all the elements of an assignment for the benefit of creditors entered into the transactions which resulted in giving him that status. There were the assignors, Davis & Buckstaff, the assignee or trustee, *Neff*, the trust reposed in him by virtue of his situation, the *cestuis que trust*, the other creditors who could enforce the trust. If we were left to determine just what the agreement was between Eaton, the attorney who represented all the creditors, and *Neff*, the first mortgagee, and the debtors, by the circumstances of the transaction, some difficulty might be met with in determining the true situation. But we are not so left. In the *Neff* mortgage, as well as in all the others, in addition to the usual clause obligating the mortgagee to turn over to the mortgagor any surplus arising from the property over and above the mortgage debt, in case of conversion of the property into money by the mortgagee, there was added the significant clause obliging *Neff* to take immediate possession of the property and account for all sales. That clearly contemplated, not only possession of the property by *Neff*, but a sale thereof by him and accounting, not to the mortgagor, but to the subsequent mortgagees. True, he had authority, probably, to sell at retail, and after receiv-

ing sufficient to satisfy his own claim to turn the balance of
the property over to the other mortgage creditors in the
order of their priority, or to Eaton as their mutual agent.
But it is quite clear that such was not the original scheme.
The parties contemplated an immediate sale of the entire
property and an accounting for the proceeds to the other
mortgagees or to Eaton for them.

If there was no other purpose in the making of the instru-
ments than to secure *Neff*, the peculiar clause referred to
was entirely unnecessary. In connection with the fact that
all the mortgages were made at the same time, drawn and
filed by the same attorney, and that *Neff* by the instructions
of such attorney took possession of the property and was
then notified by the latter that he claimed the right thereto,
representing the other creditors, subject to the former's claim,
it is quite clear that the purpose of the added clause was for
*Neff* to take such possession and account for his doings to
the subsequent incumbrancers. That the purpose was as in-
dicated is clearly borne out by the fact that *Neff* did not at
first endeavor to sell sufficient of the property to pay his
own claim. His first effort was to sell in bulk. It was only
upon his failing to obtain a satisfactory offer that way that
he proceeded to sell at retail.

So the agreement, as evidenced by the writings and what
occurred pursuant thereto, appears to have been that *Neff*
should take possession of the entire property for the benefit
of himself and all subsequent mortgagees, and account to
them for his handling thereof; that he should sell the whole
in bulk and dispose of the fund realized by satisfying his
own claim and turning the balance over to the subsequent
mortgagees in the order of their priority, or to Eaton as
their agent, for distribution. The understanding probably
was, too, that if a sale could not be made of the property as
a whole, *Neff* should sell at retail, accounting for all sales to
Eaton or to the creditors represented by him, he having the

right to take possession after *Neff's* claim was satisfied. In either case, *Neff* became a trustee in possession for the other creditors. If the mortgages were separate, independent transactions, and *Neff's* liability to answer to subsequent mortgagees merely the legal result of the situation, the case would be different. But there was something more than a liability by operation of law. There was a written agreement to take possession of the property and to account for all sales, which, as before indicated, clearly meant account to the other mortgagees. That, with the concert of action in the whole transaction, is consistent with no other reasonable theory than that *Neff's* possession of the property was by mutual agreement for the benefit of all the mortgagees in the order of their priority. He became obligated by such agreement to answer to them as trustee, and they became his *cestuis que trust*, who could have enforced the trust thus created. Of that there can be no reasonable controversy when the whole situation is viewed properly.

If we should sustain the judgment appealed from, a way would have been discovered at last, after many futile efforts in that direction, to make an assignment for the benefit of creditors without complying with the statutes of this state on the subject, and to secure at the same time a preference of some creditors over others. The sole requisite would be, several mortgages made to favored creditors, with an agreement obligating the first mortgagee to take immediate possession of the property and account for it to the subsequent mortgagees or to their mutual agent. By that means the legislative policy of the state, that creditors shall share equally the assets of their insolvent debtor in case of a trust thereof for their benefit, and that the trust shall be created with such safeguards as to secure its honest and faithful administration, would be most effectually defeated. In our judgment this case, on the facts, comes clearly within the condemnation of the statutes on the subject of assignments.

for the benefit of creditors, and previous adjudications of this court. ·

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to this opinion.