DURYEA, Respondent, vs. MUSE, Garnishee, Appellant.

*February 26—April 17, 1903.*

*Voluntary . assignment: Suspension of statute by . bankruptcy act:* *Constitutional law: Privileges of citizens.*

1. So far as the statutes of a state merely regulate and control the making and administration of common-law assignments, the enactment of a national bankruptcy law does not, *ipso facto,* abrogate them or suspend their operation.

2. Thus, the provisions of sec. 1694, Stats. 1898, that all voluntary assignments shall be void as against creditors unless the assignee shall be a resident of this state and shall give bond as therein prescribed, were not suspended by the passage of the federal bankruptcy law.

3. The requirement that the assignee be a resident of this state is not repugnant to sec. 2, art. IV, Const. U. S. (providing that

the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states), nor does it abridge the privileges or immunities of citizens of the United States, within the meaning of sec. 1, amendm. XIV, Const. U. S.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

On October 16, 1901, the principal defendant, Christopher Guthrie, was a resident and citizen of the city of Superior, and had been for a long time prior thereto. He was on the day and year mentioned, hopelessly insolvent, being indebted in a much larger sum than the fair market value of all his property. He was indebted, among others, to J. V. Farwell & Co., of Chicago, in the sum of $5,000, and to parties in St. Paul in the sum of $2,000. On October 16, 1901, said Guthrie made and delivered to the defendant garnishee, *William E. Muse,* who was then and ever since has been a resident and citizen of Chicago, Illinois, an instrument in writing under seal, whereby he assigned and delivered to said *Muse* all his property, consisting of a stock of merchandise located at the city of Superior to the value of $5,000, for the express purpose, as stated in such deed of assignment, that *Muse* would receive the same in trust and would sell the property and reduce the same to money and distribute the proceeds thereof among the creditors of Guthrie *pro rata,* without preference. In pursuance of a mutual agreement between Guthrie and *Muse* at the time of making such assignment, *Muse* took immediate possession of the property so assigned and at once advertised the same for sale. On October 16, 1901, the plaintiff was, and prior thereto had been, a creditor of Guthrie, having a claim which accrued against him prior to that date. On November 5, 1901, the plaintiff, as such creditor, commenced an action in the circuit court for Douglas county against Guthrie, to recover the amount of such claim, and at the same time garnished *Muse.* Such proceedings were had in that action that judgment was

duly entered therein upon such claim in favor of the plaintiff and against Guthrie May 21, 1902, for $323.74 damages and $19.63 costs, making in all $343.37.

The affidavit of garnishment alleged, in effect, that the plaintiff's claim against Guthrie was founded upon written contract and amounted to $323.50 over and above all setoffs, and that *Muse* was indebted to or had property in his possession or under his control belonging to Guthrie not exempt from execution. On November 26, 1901, *Muse* answered under oath to the effect that he was not indebted or under any liability to Guthrie, and that he did not have in his possession or under his control any property, effects, or credits belonging to Guthrie, or in which he had any interest, and was in no manner liable as garnishee. Thereupon the plaintiff gave notice in writing that he elected to take issue with such answer of the garnishee, and would maintain that *Muse* was liable as garnishee.

The issue thus made was tried by the court, and at the close of the trial the circuit court found the facts as above stated, and further found that at the time of the service of the garnishee summons upon *Muse* he had in his possession the stock of goods mentioned, which he has since sold and reduced to money, and now holds in lieu of said property, and as a part of the purchase price thereof, the sum of $400, the same being held subject to the order of the court in this garnishee proceeding in lieu of the property sold; that *Muse* did not, at the time of receiving the assignment, nor at any other time, make or file with the clerk of the circuit court or of the superior court for Douglas county any bond conditioned for the faithful discharge of the trust reposed in him by such assignment, nor any bond whatever, nor was the assignment, or any other papers relating thereto or connected therewith, filed in the circuit court or any other court; that Guthrie had not, since the service of the garnishee proceedings herein, or at any other time, made or attempted to make any assignment of his prop-

erty for the benefit of creditors other than to *Muse,* as stated, notwithstanding more than six months had elapsed since the service of the garnishee, and that none of the creditors of Guthrie had filed in that court a petition for the appointment of a receiver, and to prevent a preference being obtained for the plaintiff in his garnishee proceedings, except the defense interposed by the garnishee, nor has Guthrie or *Muse* or any creditor of Guthrie commenced any proceedings or in any way invoked the jurisdiction of the court for the distribution of the assets or property of Guthrie; that after the assignment to *Muse,* and before the commencement of this action, *Muse* gave notice to the creditors of Guthrie that Guthrie's liabilities were about $19,000 and his assets were $7,321.28, and that he, as such assignee, would sell such assets to the highest bidder at the time and place named, for cash, and that the proceeds would be held by him for the benefit of creditors, without preference, who had claims provable under an adjudication in bankruptcy.

And as conclusions of law the court found, in effect, that the garnishee, *William E. Muse,* had at the time of the service of the garnishee summons herein and still has in his possession and under his control properties, moneys, credits, and effects belonging to the defendant, Guthrie, exceeding the amount of the plaintiff's claim in this action, and that the plaintiff is entitled to judgment in this action against *Muse* in the sum of $343.37, the amount due upon his judgment against Guthrie, and to recover his costs and disbursements in this action; and judgment was ordered accordingly. From the judgment entered thereon accordingly the garnishee, *William E. Muse,* appeals.

*W. M. Steele,* for the appellant, to the point that by the enactment of the bankrupt act all state statutes for the regulation, control, or transfer of the estates of insolvents were suspended and rendered inoperative, cited *Torrens v. Hammond,* 10 Fed. 900; *In re Curtis,* 91 Fed. 737; *In re Rouse, H. &*

*Co.* 91 Fed. 96; *Tua v. Carriere,* 117 U. S. 201, 209; *Butler v. Goreley,* 146 U. S. 303; *In re Worcester Co.* 102 Fed. 809; *In re Macon S. D. & L. Co.* 112 Fed. 323; *Carling v. Seymour L. Co.* 113 Fed. 484; *In re Romanow,* 92 Fed. 510; *In re Sievers,* 91 Fed. 366; *Parmenter Mfg. Co. v. Hamilton,* 172 Mass. 178, 51 N. E. 529; *Foley B. L. Co. v. Sawyer,* 76 Minn. 118, 78 N. W. 1038; *Armour P. Co. v. Brown,* 76 Minn. 465, 79 N. W. 522; *Harbaugh v. Costello,* 184 Ill. 110, 56 N. E. 363; *E. C. Wescott Co. v. Berry,* 69 N. H. 505, 45 Atl. 352; *First Nat. Bank v. Ware,* 95 Me. 388, 50 Atl. 24; *Mauran v. Crown C. L. Co.* 23 R. I. 344, 50 Atl. 331; *Boese v. King,* 108 U. S. 379; *Ketcham v. McNamara,* 72 Conn. 709, 46 Atl. 146; *State by Att'y Gen. v. German Exch. Bank,* 114 Wis. 436, 90 N. W. 570; 16 Am. & Eng. Ency. of Law (2d ed.) 642, and cases cited in note 6.

For the respondent there was a brief by *Luse, Powell & DeForest,* and oral argument by *L. K. Luse.*

CASSODAY, C. J.   Our statute declares that:

"All voluntary assignments or transfers whatever of any real estate, chattels real, goods or chattels, rights, credits, moneys or effects for the benefit of or in trust for creditors shall be void as against the creditors of the person making the same unless the assignee shall be a resident of this state and shall, before taking possession of the property assigned and before taking upon himself any trust conferred upon him by the instrument of assignment, deliver to the county judge or court commissioner of the county in which such assignor or some one of the assignors at the time of the execution of such assignment shall reside, not being a creditor of such assignor, a bond duly executed" as therein prescribed.     Sec. 1694, Stats. 1898.

In the case at bar the assignor was a resident and citizen of Superior, and the assignee was a resident and citizen of Chicago.   The assignee gave no bond before or after taking possession of the property assigned, nor before or after taking upon himself the trust conferred upon him by the assignment,

as required by that section of the statutes, nor at all. Such being the facts, there can be no question but that prior to the passage of the federal bankrupt law of July 1, 1898, 30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418], such an assignment would have been "void as against the creditors of the person making the same," regardless of the question whether or not such assignment was otherwise made in good faith and without any intent to hinder, delay, or defraud creditors of the assignor. This had been repeatedly held by this court. *Cribb v. Hibbard, S., B. & Co.* 77 Wis. 199, 208, 209, 46 N. W. 168; *Maxwell v. Simonton,* 81 Wis. 635, 639, 51 N. W. 869; *Fuller & F. Co. v. McHenry,* 83 Wis. 573, 582, 53 N. W. 896; *Northern Nat. Bank v. Weed,* 86 Wis. 212, 56 N. W. 634; *Jameson v. Maxcy,* 91 Wis. 563, 65 N. W. 492; *Sweet, D. & Co. v. Neff,* 102 Wis. 482, 78 N. W. 745. The important question presented, therefore, is whether the passage of the federal bankrupt law *ipso facto* suspended the operation of the provisions of our statute above quoted. Counsel for the appellant seems to think that the decision of this court in a recent case supports his contention. *Segnitz v. Garden City B. & T. Co.* 107 Wis. 171, 83 N. W. 327. In that case it was held that an assignment made in accordance with the statutes of this state did not operate to transfer the title to personal property in Illinois, at least as against creditors residing in that state. In that case our late Brother Bardeen, speaking for the court, called attention to the fact that ch. 80, S. & B. Ann. Stats., "only assumes to regulate and control the manner in which such assignments shall be made and executed;" that it "only assumes to deal with the making and administration of common-law assignments;" but that ch. 80a of S. & B. Ann. Stats., formerly ch. 179, R. S. 1878, under the general title of "The Relief of Insolvent Debtors" and "Proceedings in Insolvency," now incorporated in a modified form in ch. 80, Stats. 1898, had "added some new features,

which led this court to speak of our whole system relating to voluntary assignments as an insolvent law." *Segnitz v. Garden City B. & T. Co.* 107 Wis. 174, 175, 83 N. W. 328. Then, after stating some of the features of ch. 80*a*, S. & B. Ann. Stats., now found in ch. 80, Stats. 1898, he said:

"Thus the way was opened to every debtor making an assignment, not only to distribute his property to his creditors, but to demand a discharge from his indebtedness as to every creditor who should come in or accept a dividend. It was, in legal effect, tacking a bankrupt law to the assignment law; and inasmuch as the distribution of the estate depends, not upon the will of the assignor, but upon the positive requirement of the law-making power, we can see no escape from the conclusion that in so far it becomes statutory, and not voluntary. . . . When the state steps in and regulates the distribution of the assigned estate in accordance with conditions which only the sovereign can prescribe, and the conditions so prescribed are such as to bring into play the essential features of a bankrupt law, the operation of the assignment will be limited to the state where made." 107 Wis. 176, 83 N. W. 329.

Thus it appears that the bankrupt features of the statutes were not found in ch. 80, R. S. 1878, or in ch. 80, S. & B. Ann. Stats., which, as stated by Mr. Justice BARDEEN, "only assume to regulate and control the manner in which such assignments shall be made and executed;" that is to say, "with the making and administration of common-law assignments." Such bankrupt features relate to the distribution of the estate of the insolvent debtor and his discharge from his debts. The distinction so pointed out by Mr. Justice BARDEEN is clearly made by the federal court in Missouri, where it was held that:

"While the insolvency laws of the several states are superseded by the enactment of the national bankrupt law, this is not the case with state statutes which merely regulate the administration of the trust created by an assignment for the benefit of creditors; and proceedings under such statutes or under a common-law deed of assignment are not void or void-

able by reason of the existence merely of a bankrupt law, or unless proceedings in bankruptcy are subsequently instituted against the assignor." *In re Sievers,* 91 Fed. 366.

As briefly indicated in *Binder v. McDonald,* 106 Wis. 332 (5), 340, 82 N. W. 156, only "the insolvency features" of ch. 80, Stats. 1898, are "to be regarded as an insolvency law." In that case it was held that, as there had been no proceedings in bankruptcy under the federal act, the state court had jurisdiction to determine a motion by the assignee under sec. 1694*a,* Stats. 1898, to dissolve an attachment levied within ten days prior to the making of a voluntary assignment. As already indicated, that section did not include any of the insolvency features of ch. 80, Stats. 1898, but only related to enforcing the assignment. So it is true that the portion of sec. 1694, Stats. 1898, above quoted, only relates to the execution of assignments; and hence it was not *ipso facto* suspended by the passage of the federal bankrupt law.

2. Counsel contends that that provision of the statute is void because it requires the assignee to be a resident of this state. The purpose of this requirement is obvious. It was to keep the property assigned within the state where the court having "supervision of the proceedings in all voluntary assignments . . . may make all necessary orders for the execution of the same." Sec. 1693, Stats. 1898. For that purpose, and to secure creditors, the bond of the assignee is required to be given. It is claimed that such statute is repugnant to the provision of the federal Constitution which declares that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Sec. 2, art. IV, Const. U. S. It was held at an early day that the privileges and immunities thus mentioned were confined to those "which are in their nature fundamental, which belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several states which compose this Union from the time of their becoming

free, independent, and sovereign." *Corfield v. Coryell,* 4 Wash. C. C. 371, cited approvingly in *Eingartner v. Illinois S. Co.* 94 Wis. 75, 76, 68 N. W. 664. In the language of Mr. Justice FIELD, "special privileges enjoyed by citizens in their own states are not secured in other states by this provision." *Paul v. Virginia,* 8 Wall. 180. See, also, *Slaughter House Cases,* 16 Wall. 76, 77. No case is cited, and we find none, holding that the constitutional provision quoted bars a state legislature from regulating the making of assignments in the manner indicated. The same is true as to the abridgment of "the privileges or immunities of citizens of the United States," in sec. 1, art. XIV, of the amendments to the constitution of the United States. That the state legislature had the power to enact sec. 1694, Stats. 1898, seems to be too plain for argument.

3. The case is anomalous. The assignment by Guthrie to *Muse* was void under the statute of this state. It was, moreover, an act of bankruptcy, and made in violation of the federal bankruptcy law. *West Co. v. Lea,* 174 U. S. 590, 19 Sup. Ct. 836. The plaintiff proceeded in the ordinary way to collect a debt by bringing suit against Guthrie and garnishing *Muse,* to whom Guthrie had transferred all of his property in violation of the state law and the federal law. Nevertheless, the court is asked to defeat the plaintiff in order to allow *Muse* to distribute all of the property of the debtor as prescribed in the void assignment. The contention of the appellant is without foundation.

*By the Court.*—The judgment of the circuit court is affirmed.