GILBERT PAPER COMPANY, Respondent, vs. WHITING PAPER COMPANY and others, imp., Appellants: FRITZ, Garnishee.

*November 17, 1904—January 10, 1905.*

*Garnishment: Assignment in trust for creditors: Statutes: Right of general creditor to garnish trustee for creditor.*

A corporation, being indebted to a large number of persons, delivered to F., who happened to be its secretary, its check for $5,000, accompanied by a communication addressed to F., as follows: "Pursuant to authority duly conferred by the board of stockholders, as well as the board of directors, there is hereby assigned to you in trust for the several parties and creditors mentioned in the annexed schedule, the aggregate sum of $5,000, to be distributed and paid forthwith to the

several parties named in detail statement." There was annexed a list of creditors, specifying against each the amount of his entire debt, and the amount to be paid to him out of the $5,000. F. deposited the money in his own bank account, and drew checks payable to each creditor named for their respective amounts. Most of the creditors accepted their checks, others notified F. that they would accept and others made no response. Plaintiff, who was one of the creditors named in the list, and who had not received its dividend, commenced action against the corporation, and garnished F. Sec. 1694, Stats. 1898, provides that all voluntary assignments for the benefit of or in trust for creditors shall be void unless accompanied by the various formalities therein prescribed (which were wholly absent from the above transaction), and sec. 2, ch. 334, Laws of 1897 (incorporated in said sec. 1694), provides that no creditor shall in any case, where a debtor has made or attempted to make an assignment for the benefit of creditors, by attachment, garnishment or otherwise, obtain priority over other creditors upon such assignment being for any reason adjudged void. *Held*, that upon no theory as to the relations arising from the transfer of said $5,000 to F., was the money subject to garnishment.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

On June 6, 1902, the Milwaukee Lithographing & Engraving Company, principal defendant, being indebted to a large number of persons—but whether solvent or insolvent, the record is silent—delivered to the garnishee, Fritz, its check for $5,000, accompanied by the following communication:

"Milwaukee, Wis., 6|20|02.
*"Oscar M. Fritz, Esq., Milwaukee, Wis.*—

"Dear Sir: Pursuant to authority duly conferred by the board of stockholders, as well as the board of directors, there is hereby assigned to you in trust for the several parties and creditors mentioned in the annexed schedule, the aggregate sum of five thousand dollars ($5,000), to be distributed and paid forthwith to the several parties named in detail stated, by order of the board of directors.

"Yours truly,
"MILWAUKEE LITHOGRAPHING & ENGRAVING Co.
"By Fred Brosius, Prest."

Annexed was a list of creditors, specifying against each the amount of his entire debt, and the amount to be paid him out of that $5,000, which in each case was about fifteen per cent. of the total debt. Fritz, who was secretary of the corporation, but did not receive the money in that capacity, deposited it in his own bank account, and drew checks payable to each of the creditors for their respective amounts, which he retained in his possession, but about June 21st sent to each a notice that there stood to his credit, as a creditor of the lithographing company a percentage on his claim of —— dollars, which might be had by calling on Fritz. Most of the creditors called, and received their checks to the amount of about $4,800; and certain other creditors, after learning that receipt in full would not be required of them, notified Fritz that they would accept, but had not received their checks, while others had made no response at all up to July 8, 1902, when plaintiff, who was one of the creditors named in the list, and had not received its dividend, commenced suit against the lithographing company, and garnished Fritz, who answered, stating the facts above narrated, and that the several other creditors named claimed the respective amounts specified in said schedule. Upon order of interpleader, service was made upon all of the unpaid creditors, and the appellants interposed answers claiming ownership of their respective dividends. Creditors whose dividends aggregated about $150 did not appear. The court adjudged the money in Fritz' hands to belong to the lithographing company, and held him liable as garnishee to the plaintiff for the whole amount thereof, except $100 for expenses incurred by him; such balance being apparently less than the amount of plaintiff's judgment. It, however, also adjudged recovery of any surplus in favor of one Fick, a subsequent garnishing creditor. From this judgment the several interpleaded creditors appeal.

For the appellants there was a brief by *Carroll & Carroll*,

*A. J. Eimermann,* and *C. T. Hickox,* and oral argument by
*Mr. Hickox* and *Mr. Eimermann.*

*J. C. Kerwin,* for the respondent.

DODGE, J.   The first question which presents itself is
whether the money placed in Fritz's hands, accompanied by
the writing set forth in the statement of facts, remained the
money of the principal defendant, subject to its control, di-
rection, and recall, or whether it was so transferred to Fritz
as an individual, distinct from the corporation, to hold for the
benefit of the persons named as recipients, that they acquired
rights therein as against him.   This subject is considerably
confused in respondent's brief by the citation of numerous
authorities declaring the right of revocation and recall to ex-
ist in the grantor of a fund or of property placed in the hands
of another upon his agreement to do something for the bene-
fit of third persons, until such third persons have accepted.
Indeed he cites numerous cases requiring complete novation
before a right of action arises against the new promisor.
These authorities give but little aid in solving the question,
for the nonsignificance of an acceptance by one for whose
benefit a contract is made between two others may be consid-
ered fully settled in Wisconsin by the case of *Tweeddale v.
Tweeddale,* 116 Wis. 517, 93 N. W. 440.   Prior to that case
there had been variant, if not conflicting, language in the de-
cisions of this court as to the necessity of such an assent by
the third person to a contract made for his benefit, in order
to preclude the donor from revocation, and probably upon no
subject are both the declarations and holdings of other courts
more in conflict.   The rule of that case has since been followed
in *Security Nat. Bank v. St. Croix P. Co.* 117 Wis. 211, 221,
94 N. W. 74; *Peterson v. C. & N. W. R. Co.* 119 Wis. 197,
204, 96 N. W. 532.

Of course, if this money did not pass out of the corporation,

but was simply deposited with Fritz as one of its officers and agents, to be handled according to the direction of his principal, there could be little doubt that any direction given was revocable until fully acted on. But we think the writing itself precludes this idea. The moneys were severed from the other moneys of the corporation. They were by that writing *assigned in trust,* and were reduced to the same kind of possession as were all other moneys belonging to Fritz in his own right. We cannot doubt that the intention of the transaction was to put this $5,000 out of the possession, custody, and control of the corporation, and that the fact that Fritz happened to be secretary of the corporation is in no wise significant. The money was assigned to him, not deposited with him. After he collected the corporation's check and deposited the money with his own bank, only he, and not the corporation, could demand it from the bank. We deem it plain that the title to the money became vested in him, and his obligations became such as resulted from the contract he made with reference thereto.

Having reached the conclusion that the specific $5,000 in question had ceased to be the property of the principal defendant, but had become that of Mr. Fritz, accepted by him upon the terms expressed in the letter accompanying it, we are then confronted with the inquiry how far general creditors of the depositaries can reach it. In this connection there is a general rule that a creditor can maintain garnishment only where the principal debtor could maintain an action for the recovery of the money or property. This general rule is modified in favor of creditors when the money or property is held upon such trusts as constitute a fraud on creditors, or to be void as against them. On the one hand it is argued that by the acceptance of $5,000, accompanied by this writing, Fritz agreed, by clearest implication, to pay these several sums, respectively, to the persons named in the writing, and that the receipt of this sum of money is a valid and complete

consideration for such promise, and that thereby arose the exact situation dealt with in *Tweeddale v. Tweeddale, supra,* where one, for a valid consideration moving from another, agrees to pay money to a third person, in which it is held that the last may, at his election, bring his action to enforce such promise, and that in the interval the transaction is so consummated in favor of the beneficiary that the original grantor of the property, or payor of the consideration, has no power of revocation. Clearly, if that were the situation, and it were free from fraud, no general creditor could maintain garnishment, for the person receiving the money or property and making the promise would neither be indebted to, nor hold any property of, such principal debtor.

It is however, urged with much vigor that this instrument declares in express terms a trust, of which the several persons named in the writing are beneficiaries, and that they would have no right of action at law against Mr. Fritz, but must proceed in equity as for the enforcement of a trust. Whether this be so, where the only duty to be performed by a so-called trustee is payment of specific sums of money, is questioned, as also whether, even if suit must be in equity, that would constitute any valid distinction from the principle of the *Tweeddale Case.* We need not undertake to resolve such questions, however, for, if this be a trust for the several creditors named, the situation is controlled by the statute. It is now well settled that any transfer of property to a trustee upon a trust to distribute to creditors is an assignment for benefit of creditors, as that term is used in sec. 1694, Stats. 1898, and is, by that statute rendered void unless accompanied by the various formalities prescribed, which are wholly absent in the present transaction. *Winner v. Hoyt,* 66 Wis. 227, 28 N. W. 380; *Cribb v. Hibbard, S. B. & Co.* 77 Wis. 199, 209, 46 N. W. 168; *Bugbee v. Lombard,* 94 Wis. 326, 68 N. W. 958; *Dahlman v. Greenwood,* 99 Wis. 163, 74 N. W. 215; *Sweet, D. & Co. v. Neff,* 102 Wis. 485,

78 N. W. 745; *Kickbusch v. Corwith,* 108 Wis. 634, 648, 85 N. W. 148.

The present situation presents all the elements distinguishing an assignment for creditors under those decisions, if, as is suggested above, it is not a mere contract to pay specific sums to specified persons. Excluding that view, then we have a trustee, a trust with reference to property transferred by the debtor, and creditors as *cestuis que trustent.* The same authorities also established the proposition that such assignment being void, the assigned property continued to belong to the assignor, at least so far as his creditors were concerned, and could be reached by attachment or garnishment. The trial court seemed to consider the rule of these cases obscured by *Greene & B. Co. v. Remington,* 72 Wis. 648, 39 N. W. 767, 40 N. W. 643, but needlessly, for that case presented neither trust nor trustee—merely a promise to pay certain sums to specific persons out of the agreed purchase price of property conveyed absolutely; a situation in no wise legally distinguishable from that considered in *Tweeddale v. Tweeddale,* which must be considered to overrule anything said or decided in the former case inconsistent with it. The rule of the above-cited void assignment for creditors cases would, of course, sustain the garnishment here, but for new legislation prohibiting such procedure. After the decision of most of those cases the legislature enacted:

"No creditor shall in any case where a debtor has made or attempted to make an assignment for the benefit of creditors, or in case of insolvency of any debtor, by attachment, garnishment or otherwise obtain priority over other creditors upon such assignment being for any reason adjudged void." Sec. 2, ch. 334, Laws of 1897.

We can entertain no doubt that this legislation was aimed directly at the rule laid down in *Winner v. Hoyt, supra,* and following cases, that property attempted to be conveyed by a void voluntary assignment could be seized by any individual creditor by attachment or garnishment. Indeed, its words

are too plain to invite or permit attempt to construe it upon that subject. We can but enforce it. We are aware that in *Duryea v. Muse,* 117 Wis. 399, 94 N. W. 365, subsequent to 1897, a garnishment was sustained against the assignee under a void voluntary assignment upon authority of the earlier cases. The court did not, in its opinion, at all discuss or consider the force of this legislation of 1897. It did not expressly deny it effect. If, however, it did so by implication, in sustaining the garnishment notwithstanding such statute existed and was called to our attention in the briefs, that implied denial must be deemed overruled.

The conclusion results that upon no theory as to the relations arising from the transfer of this sum of money which can be deduced from the writing defining those relations can the money be subject to garnishment.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the garnishee actions, and to order return to the garnishee, defendant Oscar M. Fritz, of the money by him deposited in court.

KERWIN, J., took no part.