Security National Bank of Sioux City, Iowa, Appellant, vs. St. Croix Power Company, Respondent.

*November 15—December 12, 1905.*

*Mechanics' liens: Waiver by subcontractor: Estoppel as to owner: Settlement between owner and contractor: Assumption of contractor's obligations: Extra work under separate contract.*

1. An agreement between a principal contractor and a subcontractor provided that the latter should save and keep the improvement to be built and the lands on which it was situated "free from any and all mechanics' liens and any other liens by reason of his work or of any materials or other things used therein," and that if he failed so to do the principal contractor might retain sufficient of the contract price and might "pay said lien or liens, if any, and costs, and deduct the amount thereof from said contract price." *Held,* that this was a waiver by the subcontractor of his own right to a lien.

2. The premises in question having been conveyed by the principal contractor to defendant, in accordance with the original contract, after the making of the subcontract, defendant had the right to rely upon the promise that the cost of the improvement should not be made a lien; and the plaintiff having, after the death of the subcontractor, carried on the work under the subcontract with the assent of all parties, thus affirming the waiver

of the right to a lien, could not thereafter change his position and assert such right as against the defendant.

3. A settlement between defendant and the principal contractor, by the terms of which the latter undertook to protect defendant from all claims except three, one of which was a lien claim filed by plaintiff on account of work done under the subcontract, did not operate as an assumption by defendant of the principal contractor's obligation to plaintiff.

4. For extra work done by a subcontractor under a separate contract made directly with the owner there could be no recovery from the owner in an action to foreclose a lien for work done under the subcontract, where the complaint stated no separate claim but included the amounts due for extras as a part of the claim against the principal contractor.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

The plaintiff, a national bank, organized under the banking laws of the United States, at Sioux City, Iowa, commenced this action to enforce payment of a claim which it alleges is due it under the transactions stated in the complaint. The material facts alleged in the complaint are fully stated in the report of the case on its former appeal to this court in 117 Wis. 211, 94 N. W. 74. In addition to the facts there stated, the material facts of the transaction involved on this appeal as shown by the record are as follows:

On August 11, 1899, the defendant contracted with one Robert N. King, whereby King agreed to construct for defendant a power plant on the premises designated, according to the plans, specifications, and details incorporated into the contract, and to transfer the same to defendant in consideration of the sum of $445,000 to be paid him. The plant was completed and accepted by defendant before the commencement of this action. A part of the plant so to be constructed was a flume, and on September 15, 1899, King made a contract with John E. Robson of Sioux City, Iowa, whereby Robson agreed to construct the flume specified in the contract between King and the defendant. Under this contract Robson was required to begin work within twenty days from the

date of the execution of the contract and to complete it, except the covering of the flume, within sixty days thereafter. The consideration specified for the execution of the contract was to be paid Robson as the work progressed upon estimates to be made by the engineer in charge of the construction, it being agreed that Robson was to receive eighty per cent. of the value of the work done and the material furnished each month by the 15th day of the succeeding month; the remaining twenty per cent. was to be retained by King until acceptance of the completed work and final settlement. The last clause of the contract was as follows:

"The said builder [Robson] shall have and keep the improvement hereinbefore referred to and the lands on which it is situated free from any and all mechanics' liens and other liens by reason of his work or of any materials or other things used therein; and if said builder fails so to do the owner may retain sufficient of the contract price to pay for the same and all costs by reason of or in consequence thereof, and may pay said lien or liens, if any, and costs, and deduct the amount thereof from said contract price."

Robson immediately entered upon the execution of the work undertaken by his contract, and prosecuted it to the time of his death, which occurred December 31, 1899. The work and construction so undertaken by him was not then completed. Payment of the eighty per cent. of the estimates furnished by the engineer upon the work done and the material furnished had been made to him, except for the month of December, the payment of which estimate was made in January. In order to secure his indebtedness to the plaintiff, amounting at the time to the sum of $4,000, Robson, on September 15, 1899, assigned all his right and interest in this contract to plaintiff. Shortly after Robson's death his widow was appointed administratrix of his estate.

The court found that the part of the flume unfinished at the time of Robson's death was completed by the plaintiff with the assent of the administratrix and King, and that plaintiff

was treated by all connected with the enterprise as if it instead of Robson had been the original contractor for the work; that the flume was completed and accepted by the defendant under its agreement with King; that the total amount due for the work done and the material used in the construction of the flume under the contract was the sum of $32,786.26, of which, when the action was tried, King had paid $25,838.71, leaving an unpaid balance of $6,947.55.

On August 31, 1900, plaintiff served a notice of lien on defendant, claiming the right of lien for $7,554.86 (this amount included some extras) and interest, as substituted subcontractor. On September 1, 1900, it caused a claim for lien on defendant's power plant and lands for this amount to be filed; and within a year it brought this action to foreclose this lien. It is alleged that defendant and King settled all demands and claims arising out of their contract for the construction of the power plant after such claim for a lien had been filed by the plaintiff; and that defendant as part of such settlement paid King a large sum of money, released him from his contract obligation, and also agreed to and did assume the payment of all of the obligations of King arising out of and connected with the construction of this power plant, including the amount claimed by plaintiff as due it and sued for in this action.

It appears that defendant and King entered into an agreement on July 13, 1900, whereby they adjusted some of the claims and liabilities arising under the contract of August 11, 1899, whereby they modified the original contract in some specified particulars, but left it in force *in all other respects.* The matters enumerated and adjusted pertained to the expedition of the work and the completion of the plant for operation by September 15, 1900; to the payment to King of all moneys expended by him on the plant, with an additional six per cent. provided the total amount did not exceed the sum agreed upon in the contract of August 11, 1899; to future

payments upon presentation of the vouchers for expenditures incurred, and the bonus to be paid King if he completed the plant before September 15th following; and to an agreement by which the six per cent. commission was to be treated as profits. This agreement was not to affect King's obligation, nor to be an acceptance of the work, and unless expressly abrogated by the terms of this agreement all the provisions and conditions of the original contract of August 11, 1899, were to remain in force. There is nothing in this supplemental agreement specifically referring to plaintiff's claim or demand for compensation for completing the flume. On February 26, 1901, the defendant and King finally settled all the demands, claims, and differences between them pertaining to the construction of the power plant, and defendant then paid King $28,216.66 in full satisfaction of all demands. Under the terms of this settlement the specification in subdivision 4 is the only one having any materiality to the issues presented in this litigation:

"4. Said King will accept the payments to be made by the power company as hereinabove provided, together with the payments by it already made to him or for his account, in full settlement and satisfaction of any and every claim that said King has or may have against the power company for or on account of anything done, furnished, or suffered by, for, or under said King, under, in pursuance of, or in connection with said contract as so modified and supplemented, and will hold the power company harmless from any and every claim and demand of whatsoever description made or that may be made by any one whomsoever on account of anything done, performed, or furnished to, for, under, or on account of or suffered from said King, or under, or in performance of, or in connection with his said contract as so modified and supplemented, save only (1) said claim of the Stillwell-Bierce & Smith-Vaile Company; (2) the mechanic's lien heretofore filed in St. Croix county, Wisconsin, against the property of the power company by one H. C. Farmer; and (3) the mechanic's lien heretofore filed in said county against said property by the *Security National Bank of Sioux City, Iowa*."

This action was tried after this settlement and payment.

The court held, among other things, that Robson had waived his right to a lien under his contract with King of September 15, 1899, and that plaintiff stood in no better position in this respect than Robson would have occupied had he lived and completed the flume, and that defendant at no time assumed and agreed to pay the claim which plaintiff seeks to enforce and recover in this action. Many other facts were involved in the trial and covered by the court's findings, but in view of our conclusions in the case need not be recited here. The defendant was awarded judgment dismissing the complaint and for costs and disbursements in the action. This is an appeal from such judgment.

*R. M. Bashford,* for the appellant, as to the claim for extra work, cited *Wambold v. Gehring,* 109 Wis. 122; *J. G. Wagner Co. v. Cawker,* 112 Wis. 532, 541; *Reindl v. Heath,* 109 Wis. 570.

For the respondent there were briefs by *Baker & Haven,* and oral argument by *Spencer Haven.*

SIEBECKER, J. Upon the former appeal of this case it was determined that if plaintiff succeeded to the rights of the subcontractor with the consent of the principal contractor, the administratrix of Robson's estate, and the defendant as owner, then plaintiff stood as subcontractor in place of the deceased Robson, and this "put the bank in the shoes of Robson and constituted it, in truth and in fact, a subcontractor." 117 Wis. 211, 94 N. W. 74. The plaintiff now claims the right to a subcontractor's lien against defendant's property as the party substituted for Robson after his decease. Plaintiff and defendant assert conflicting claims as to whether the evidence establishes such a substitution. The court held that no such substitution was effected, and we are urged by plaintiff to reverse this conclusion of the court. It is, however, unnecessary to review this question in view of the conclusion we

find determinative of plaintiff's right to a recovery in this action.

As indicated, the plaintiff asserts the right to a subcontractor's lien under our statute because it has taken the place of Robson under his contract with King. In this position it is bound by the covenants of the agreement thus assumed, and any rights arising from the execution of the contract by the completion of the flume must be determined under it. It was therein agreed:

"The said builder [plaintiff] shall save and keep the improvement hereinbefore referred to and the lands on which it is situated free from any and all mechanics' liens and other liens by reason of his work or of any materials or other things used therein; and if said builder fails so to do the owner may retain sufficient of the contract price to pay for the same and all costs by reason of or in consequence thereof, and may pay said lien or liens, if any, and costs, and deduct the amount thereof from said contract price."

The trial court held this to be an express waiver of the right of the builder to a mechanic's lien upon the land and the improvements erected thereon. There is no contention but that the right to a mechanic's lien may be waived by the parties (see *Brzezinski v. Neeves,* 93 Wis. 567, 67 N. W. 1125; 2 Jones, Liens (2d ed.) § 1500*a; Murray v. Earle,* 13 S. C. 87), but it is insisted that this provision in the agreement does not constitute such a waiver. The language employed, though not the most apt to express a waiver, points with reasonable certainty and directness to the conclusion that the builder was to protect and keep the premises free from all mechanics' and other liens, and that this protection and freedom from liens was to extend to the builder's work as well as to any claim for materials used. We think this the evident intention of the parties and the significance of the phraseology employed. By it the right of lien which the law would have awarded plaintiff was waived, and it is precluded from asserting such a claim.

It is urged that only the principal contractor, King, can

insist upon the waiver, that he has refused to enforce this stipulation, and that his conduct shows acquiescence in plaintiff's claim to a subcontractor's lien.    This position omits consideration of defendant's rights, as owner of the property, to protection from claims affecting the title.    When defendant, in October, 1899, took a conveyance of this property from King under the original contract, it had the right to rely on the promise that the costs of the improvements made thereon should not be made a claim against it, and that the Robson contract would be carried out in this respect.    The plaintiff avers and the record shows that it proceeded with the work on the flume after Robson's death with the assent of the administratrix, of King, and of the defendant, under the terms of the Robson contract, thus expressly affirming the waiver of the right to a lien.    Under these circumstances neither King nor plaintiff can change their position upon this question, as they now seek to do, without injuriously affecting the rights of, the defendant as owner of the premises.    Parties will not be permitted to change their positions under such conditions to the prejudice and probable injury of another and thereby gain an advantage for themselves.    2 Parsons, Contracts (9th ed.) 961 (*790) *et seq.; Hathaway v. Payne,* 34 N. Y. 92, 109, and cases cited.    To the same effect, *Pabst B. Co. v. Milwaukee, ante,* p. 110, 105 N. W. 563.    We find nothing in the record to sustain the contention that defendant by its conduct in these particulars is estopped from insisting on the enforcement of this stipulation.    It did nothing denying its validity or binding effect.    Nothing occurred which could have influenced plaintiff to change its position or to forego any right in relation to the matters in controversy.    The plaintiff being thus precluded from asserting any right of lien, all the questions raised and argued by counsel as to the sufficiency of the steps taken and as to its enforcement become, under the circumstances, immaterial, and need not be considered.

It is claimed that defendant is liable to plaintiff for this

claim upon the ground that it agreed with King in the contract of July 13, 1900, and in the final settlement of February 26, 1901, to pay it for him. This relief was denied by the trial court upon the ground that defendant never promised or agreed with King or with the plaintiff to pay this claim, and that it never assumed payment of any of King's obligations which could be held to include plaintiff's claim. This contention is negatived by the plain terms of the July agreement. Nothing obscure in its provisions necessitates resort to the circumstances under which it was made to enable the court to read the instrument in the way intended by the parties. *Newell v. New Holstein C. Co.* 119 Wis. 635, 97 N. W. 487. It is a clear statement of a settlement of the differences which had arisen between them as to the performance of their mutual obligations under the agreement of August 11, 1899, modifying that contract in some particulars, providing for an advancement of money to King for work done, and expressly declaring that the agreement should in no way be deemed an acceptance of the work or material theretofore or thereafter performed or furnished, and that the original contract should remain in force in all respects except in the particulars specified. An examination of the terms of the settlement of February 26, 1901, shows an express agreement to the effect that King accepts the payment of the sum fixed by its terms, and that he undertakes to protect the defendant from all claims or demands incurred by him in the installation of the plant, with the exception of three items, only one of which, namely, the mechanic's lien filed against the property of the defendant by the plaintiff as a subcontractor, has any relevancy to the controversies involved in this action. That plaintiff had no rights against defendant under this lien claim has already been shown. We think the court held correctly that there was no assumption by the defendant of King's obligations as claimed, and that no recovery by a third party can be upheld under the contracts upon the principle sustained in the cases

of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440;
*Rietzloff v. Glover,* 91 Wis. 65, 64 N. W. 298; or *Gilbert P.
Co. v. Whiting P. Co.* 123 Wis. 472, 102 N. W. 20.

Upon plaintiff's claim for extras the court found that the
items of it were not incurred under the Robson contract, but
related to matters entirely outside its terms; that the extra
work done and the materials furnished were at the request
of defendant's engineer, under a separate contract with the
engineer, and that King never became obligated therefor.
The pleadings set out no such claim, but it is sought to include
these amounts as a part of the claim against King.   The bill
of exceptions shows that objections were properly taken to
any evidence as to these items, and the trial court properly in-
dicated in its legal conclusions that such evidence was errone-
ously received and should be so treated in the final result of
the trial.   This disposition of the claim was proper, and the
ruling must stand.

No grounds for a personal judgment against defendant
have been established.

*By the Court.*—Judgment affirmed.