## MARR–PIPER CO. v. BULLIS et al. *
(No. 861–4951.)

Commission of Appeals of Texas, Section B.
Jan. 11, 1928.

**1. Brokers** ⚖️88(2)—**Whether undisputed testimony as to sale of real estate shows implied contract for brokers' commission held question of law.**

Where evidence relative to transaction for sale of real estate was undisputed, question whether it shows implied contract to pay commission to brokers is one of law for court's determination.

**2. Brokers** ⚖️8(3)—**Evidence held sufficient to show implied contract for brokers' commission in sale of property not listed, broker having presented purchaser without solicitation.**

Evidence relative to transaction for sale of real estate *held* sufficient to show that there was implied contract for payment of brokers' commission, which was to be paid by purchaser under agreement with vendor, notwithstanding that vendor had not listed property with broker and that broker presented purchaser without any solicitation by or contract with vendor.

**3. Contracts** ⚖️4—**Implied contract is as binding as express contract; "contract implied in fact."**

Contract implied from facts and circumstances in evidence is as binding as expressed

---

contract would be; "contract implied in fact" being one in which, under circumstances, acts of parties are such as to indicate according to ordinary course of dealing and common understanding of men mutual intention to contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract Implied in Fact.]

**4. Contracts �port187(4)—Purchaser held liable to brokers for commission under promise to vendor to pay them.**

Purchaser of real estate *held* liable to brokers for commissions under promise to vendor to pay any commissions that would be due, since such promise was made for benefit of brokers, and on their accepting it purchaser became primarily liable to them for commissions.

**5. Contracts ⊙187(5)—Broker's suit against purchaser for commissions evidences his acceptance of purchaser's promise to owner to protect owner against commissions.**

Broker's suit against purchaser on latter's promise to owner to protect latter against payment of commissions evidences acceptance of promise made for his benefit, creating primary liability against purchaser.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by the Marr-Piper Company against Josephine W. Bullis and another, in which the named defendant sought judgment over against defendant Frank Alderete. Judgment for plaintiff and for defendant Bullis against defendant Alderete was reversed and rendered in favor of Bullis and remanded as to Alderete by the Court of Civil Appeals (296 S. W. 624), and plaintiff and defendant Alderete bring error. Judgment of Court of Civil Appeals reversed, and that of trial court affirmed.

John T. Hill, of El Paso, for plaintiffs in error.

John B. Howard, James R. Harper, and Goggin, Hunter & Brown, all of El Paso, and Guy S. McFarland, of San Antonio, for defendants in error.

SPEER, J. This suit was instituted by Marr-Piper Company, a copartnership engaged in business as real estate brokers, against Mrs. Josephine W. Bullis and Frank G. Alderete, to recover commissions upon a sale of real estate belonging to Mrs. Bullis in the city of El Paso. Mrs. Bullis was sued upon an implied contract to pay such commissions, and the defendant Alderete, who was the purchaser of the property, was sued upon his agreement with Mrs. Bullis at the purchase that he would pay any commissions that would be due. Mrs. Bullis also sought judgment over against Alderete upon his promise to protect her. The plaintiffs recovered according to their prayer, and Mrs. Bullis likewise recovered over against Alderete. The Court of Civil Appeals reversed

the judgment and rendered judgment in favor of Mrs. Bullis, but remanded the cause as to the defendant Alderete. 296 S. W. 624. Writs of error have been granted both to Marr-Piper Company and Alderete.

The judgment of the Court of Civil Appeals as to Mrs. Bullis was predicated upon its conclusion that there was "no evidence in the record establishing an acceptance on the part of Mrs. Bullis of the offer of appellee to sell her property for a commission, and in fact the evidence indicates, if anything, her unwillingness to do so." The evidence bearing upon the issue of implied contract is made up, for the most part, of correspondence between the parties, and is set out by the Court of Civil Appeals as follows:

"El Paso, Tex., March 31, 1925.
"Mrs. Josephine W. Bullis, 627 Pierce St., San Antonio, Tex.—Dear Madam: We have a party with whom we have been figuring for several months, on a location for a picture show on South El Paso street.

"We have put up to him the property now occupied by Davis Bros., where they operated the old Bijou Theater. He states, however, that this is too far up on El Paso street and on the wrong side of the street for a picture show.

"We also mentioned to him your 63 and a fraction feet in the 300 block on South El Paso street, and he asked us to find out whether or not you would consider putting up a building on this property for him. He is willing to take a five or ten year lease and we believe the man to be financially responsible.

"We think you have good outside walls on this property and that it would not be such a very expensive operation to tear down the interior and rebuild.

"We, of course, do not know whether you are financially in position to build, or whether or not you would consider same for any other reason.

"We thought we would put the matter to you in this way for your consideration, and if you feel like going into the matter further, we could find out what it would cost and then base the rent on an income basis, considering the value of the real estate plus the cost of the improvements.

"We would be glad to hear from you considering this.
"Yours very truly, P. D. Rice."

"San Antonio, Tex., April 5, 1925.
"Marr-Piper Company—Dear Sirs: Yours of March 31st received, and contents noted, and in reply will say that it would not be a bad idea to do as you suggest if it would not cost too much, and if it would pay sufficient for the outlay.

"You might figure what it would cost, and let me know, 7 per cent. is certain and safe. I may consider if the proposition is attractive enough. Thanking you kindly,
"Yours truly, Josephine W. Bullis."

"El Paso, Tex., April 8, 1925.
"Mrs. Josephine W. Bullis, 627 Pierce Ave., San Antonio, Tex.—Dear Mrs. Bullis: We have

your favor of April 5th, and we are going to have some sketches made of the building necessary and ascertain the approximate cost so as to be able to advise you of the amount necessary to be expended.

"The people with whom we are figuring on this building might be interested in buying this property and building, and on building, provided they can get the property at a reasonable value. If you would be interested in making a sale rather than spending the money necessary .to put up the building, we would be glad if you would let us know what price you would take for same, and the terms you would require, including 5 per cent. commission to us, in case of consummation of the sale. Yours very truly, Rental Department, Marr-Piper Company, by P. D. Rice."

"April 15, 1925.

"Mrs. Josephine W. Bullis, 627 Pierce Ave., San Antonio, Tex.—Dear Mrs. Bullis: Further in connection with our correspondence regarding the erection of a moving picture show on your South El Paso street property, we have had several contractors give us an approximate figure covering the cost of this property, and find that it would entail an expenditure of approximately $30,000.

"We are figuring with Frank G. Alderete who is now operating a picture show called the Eureka Theater on the corner of El Paso and Second streets. We are offered a lease for five or ten years by this man, and we believe him to be thoroughly responsible, on the basis of $500 per month. We think that we should have more than $500 for the second five-year lease.

"Mr. Alderete is going to East Texas the latter part of this month, and he would like to know if it would be agreeable for him to call on you and discuss the question of the erection of this building and a lease to him on a basis that would be profitable to you. At the same time he may take up the question of the purchase of this real estate in line with our letter of April 8th.

"We would be glad if you would advise us on receipt of this letter, whether you care to deal direct with Mr. Alderete on either of these propositions and have him call on you as above suggested, or whether you prefer for us to handle all of the negotiations. Yours very truly, Rental Department, Marr-Piper Company, by ———."

"San Antonio, Tex., April, 19, 1925.

"Marr-Piper Company—Dear Sirs: Yours of the 15th read, and I am wondering if the erection of a moving picture building on South El Paso street would take all the frontage I own there. You, as my agent, could tell me what property is selling for a foot on either side of me, and in that way give me some idea of the value in case I wanted to sell. I have several deals I am trying to get through, but it will be a few months .or more before they will materialize. I know what my husband paid for the said property some fourteen years ago; they should have improved since then, but now I am unable to say how they are. With taxes and insurance, I doubt if it would pay to erect such a building and make it pay at that rent.

"Yours truly,        Josephine W. Bullis."

"El Paso, Tex., April 21, 1925.

"Mrs. Josephine W. Bullis, 627 Pierce Ave., San Antonio, Tex.—Dear Mrs. Bullis: We have

your letter of the 19th inst., and in reply we beg to say that in our opinion your property on S. El Paso street is worth $800 per front foot or around $50,000 for the 63 feet. There has been some property sold in that particular block in the past at $1,000 per front foot, but that particular property had improvements of a must better character and of more value than yours, which would add at least $200 per front foot to the value. Then, again, things were somewhat better at that time than they are now.

"Mr. Frank G. Alderete, the party with whom we have been negotiating on this property, is coming down to Middle Texas in the next few days, and if it is agreeable with you, he is going to drop in to see you and talk the matter over and see if something in the way of a price for sale or lease cannot be arrived at. Yours very truly, Marr-Piper Company, by W. R. Piper."

"El Paso, Tex., April 21, 1925.

"Mrs. Josephine W. Bullis, 627 Pierce Ave., San Antonio, Tex.—Dear Mrs. Bullis: This will introduce to you Frank G. Alderete, one of our pioneer citizens, who is calling on you for the purpose of discussing the matter of purchase or lease of your El Paso street property.

"In case there is a possibility of your coming together on either proposition, we shall, of course, be glad to render .the necessary assistance in consummating any transaction that might be started. Yours very truly, Marr-Piper Company, by W. R. Piper."

"San Antonio, Tex., May 13, 1925.·

"Mr. F. G. Alderete, El Paso, Tex.—Dear Sir: I have signed and herein inclose you the deed which you sent me with your letter of the 11th, and you are authorized to buy and put on the deed the $39 United States revenue stamps required by law and take credit for it on the next installment of interest.

"I inclose you a copy of a letter I got to-day from Marr-Piper Company and my reply thereto. This contract was signed at this price with the understanding with you that it should be net to me, and that nobody had any claim for commission, and that you would hold me harmless against any such claims, and I am sending you the deed with that understanding. If you are not willing to protect me against commission, then return the deed and I will return your notes and check, because the price must be net to me.          Yours very truly."

[1] It is undisputed that Mrs. Bullis closed a deal with Alderete, and the evidence therefore being undisputed, whether or not it shows an implied contract is a question of law for our determination.

[2] The Court of Civil Appeals has apparently confused the question by a failure to differentiate between express and implied contracts. They say:

"The evidence being undisputed that Mrs. Bullis had not listed the property for sale with appellee, but that appellee on its own initiative presented the party desiring to buy the property, without any solicitation by or contract with Mrs. Bullis, therefore Mrs. Bullis is not liable for any compensation to it for such act."

[3] But that conclusion does not follow from the existence of the facts stated. Such

facts might have tended to show an express contract, but, clearly, under the pleadings, the plaintiff in error made a case of implied contract; and whether the property had been previously listed with the plaintiffs in error or not, and even though they tendered a prospective purchaser without any solicitation by, or contract with, Mrs. Bullis, yet, if she accepted their tendered purchaser under circumstances which implied an agreement to pay therefor, she would be liable. A contract implied in fact is one in which, under the circumstances, the acts of the parties are such as to indicate according to the ordinary course of dealing and the common understanding of men a mutual intention to contract, as where one accepts the tendered service of another under circumstances justifying the inference that such other expected to be paid for such services. Of course, in implied contracts as well as express contracts there must be shown the element of mutual agreement. But the only difference is that such agreement is expressly stated, in the one instance, and is inferred from the circumstances, in the other. A contract implied from the facts and circumstances in evidence is as binding as would be an expressed one. This is academic. See Ross v. Moskowitz (Tex. Civ. App.) 95 S. W. 86, affirmed in 100 Tex. 434, 110 S. W. 768.

A consideration of the corespondence between plaintiff in error and Mrs. Bullis and defendant in error convinces us that the verdict of the jury, in effect establishing a contract between the parties, is abundantly supported by the evidence. Indeed, under the undisputed facts, we are inclined to. think the trial court should have given a summary instruction for the plaintiffs. But we are not called upon to put our decision upon that ground. It cannot be said, as held by the Court of Civil Appeals, there is no evidence to support the verdict. It is perfectly clear from the correspondence that the plaintiffs in error, who were real estate brokers, but who did not at the time have authority to sell Mrs. Bullis' property, came in contact with a prospective purchaser and tendered such purchaser to Mrs. Bullis under circumstances clearly indicating their expectation to receive a commission in the event she sold her property to him. Mrs. Bullis negotiated a final sale to plaintiff in error Alderete upon price and terms satisfactory to her, through the agency of plaintiffs in error, and by availing herself of their services impliedly agreed to compensate them according to their expectation as brokers. It is clear she expected they might claim a commission, for she was careful to protect herself against ultimate payment through an agreement with the purchaser that he would pay such commissions as might be claimed. We think the Court of Civil Ap-

peals erred in reversing and rendering the judgment in defendant in error's favor.

[4, 5] The plaintiff in error Alderete complains that, since by the judgment of the Court of Civil Appeals Mrs. Bullis had been relieved of liability, there could be not possible basis for a judgment against him. Our conclusion above noted, that Mrs. Bullis is liable, answers this contention. But there is another reason why Alderete's contention cannot be sustained. His promise in the purchase from Mrs. Bullis to pay the commissions was made for the benefit of plaintiffs in error, and upon their accepting the same (and the suit evidences such acceptance) he became primarily liable to them for the commissions. W. U. Tel. Co. v. Douglass, 104 Tex. 66, 133 S. W. 877; American, etc., Bank v. American Loan & Mortgage Co. (Tex. Com. App.) 228 S. W. 169; International, etc., Co. v. Concrete Inv. Co. (Tex. Com. App.) 263 S. W. 265; Johnson v. Central Trust Co., 159 Ind. 605, 65 N. E. 1028; Jones v. Higgins, 80 Ky. 409; Tweeddale v. Tweeddale, 116 Wis. 517, 93 N. W. 440, 61 L. R. A. 509, 96 Am. St. Rep. 1003; Gilbert v. Whiting Paper Co., 123 Wis. 472, 102 N. W. 20; Beattie v. Clark, 208 Mo. 89, 106 S. W. 29.

We have examined the appellant's assignments of error in the Court of Civil Appeals and considered them. None of them requires the judgment actually rendered by the Court of Civil Appeals. See Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed, as recommended by the Commission of Appeals.