## BREEDING et al. v. MAYOR.

### No. 2343.

Court of Civil Appeals of Texas. Beaumont.

May 1, 1933.

## ÆTNA INS. CO. v. TEXARKANA NAT. BANK et al.

### No. 1106.

Court of Civil Appeals of Texas. Eastland.

April 28, 1933.

Rehearing Denied May 26, 1933.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

King, Mahaffey, Wheeler & Bryson, of Texarkana, and Bouldin & Zivley, of Mineral Wells, for appellees.

LESLIE, Justice.

This is a suit by W. T. Sweatt, owner, and Texarkana National Bank, trustee of the estate of Robert Buchanan, loss payee, against the Ætna Insurance Company on a policy covering a building situated in Mineral Wells, Tex. The defendant entered a general denial and specially alleged facts claimed by it to show that its policy never took effect as a substitute for one of the Commercial Union Assurance Company, theretofore issued and then covering the risk, and which was attempted to be canceled out by order of that company to one Beeler, the common agent of said companies, and who attempted to make the substitution, etc. The trial was before the court and jury, and at its conclusion the defendant requested an instructed verdict, but the court overruled the same and directed one for the plaintiffs. The defendant appeals, and the parties will be referred to as in the trial court.

By six propositions of law the defendant contends that the judgment is erroneous. From different angles these propositions present, in substance, the contention that the policy in suit never became effective, since the Commercial Union policy for which it was intended as a substitute was never legally canceled. The contention in the main rests upon the theory that the evidence discloses without controversy that, at the time of the fire, there had been no communication of any kind with any representative of the mortgagee bank in reference to the cancellation of the original policies, and that the legal effect of the agreement and the negotiations between Sweatt, the owner, and Beeler, the agent of the companies, was that, whenever the Commercial Union and the General Insurance Companies, through their agent, Beeler, obtained a cancellation of the mortgagee's interest under the old policies and a substitution of the new policies for such insurance under the old policies, then the interest of the assured under the old policies would be canceled. There is the additional contention that Sweatt in no way represented the bank in his negotiations for the policy sued on, and that the original policies were never canceled, either by agreement or in compliance with the provision for notice as a prerequisite to cancellation.

That this court's rulings may be clearly reflected, it becomes necessary to, state, in substance, the essential facts disclosed by the record: August 23, 1926, W. T. Sweatt acquired the property destroyed by fire, paying in part therefor a vendor's lien note for $3,500. A deed of trust was also executed by Sweatt as additional security for the note. The payee in the note transferred it to Robert Buchanan, who subsequently died, leaving a will making plaintiff bank trustee of his estate, with power to collect the assets thereof and distribute same to the beneficiaries. With this interest in the estate the bank called upon Sweatt to carry $5,000 insurance on the property, payable to it as its interest appeared. The bank specified no particular companies to carry the risk, and pursuant to such understanding made with Sweatt he arranged for the insurance with one Beeler, who represented a large number of insurance companies and left the matter of the selection of companies to the agent. As a result, insurance policies were issued payable to said Sweatt, owner, and the bank, loss payee, one for $2,000 in Scottish Union & National Insurance Company, a second for $1,500 in the Commercial Union Assurance Company, and a third for $1,500 in the General Fire Insurance Company of North America. The policies, dated August 12, 1931, were delivered by the agent to Sweatt, who a day or two later delivered them in person to the Texarkana Bank. On August 13, 1931, the General Fire Insurance Company requested Beeler to cancel its policy. He complied with this request and wrote as a substitute for it a policy in the People's National Fire Insurance Company. On August 14, 1931, the Commercial Union directed the agent to cancel its policy, which he did, and substituted for it the policy of the Ætna Insurance Company, the basis of this suit. The two new or substitute policies were issued August 15, 1931, by the agent Beeler, who went to Sweatt, the owner, and explained the cancellation of the original policies, the rewriting of the risk as evidenced by the last two policies, and requested Sweatt to return the two canceled policies. The assured agreed to the cancellation of the old policies and signified his acceptance of the substituted ones. On August 17th, Beeler wrote the Texarkana Bank, likewise explaining the cancellation of said policies and suggesting the return of the old ones. The following day, August 18th, the agent Beeler mailed the two substituted policies to the Texarkana Bank. They were properly addressed and postage prepaid. The bank returned the two original policies by mail August 20th and they reached the agent at Mineral Wells the same or the following day. Beeler's letter of August 17th did not reach the bank until August 20th, after the fire, which occurred on the 19th day

of August. The substituted policies reached the Texarkana Bank August 20th.

■ Each of the policies sought to be canceled and those intended as a substitute for them contained a provision that the same could be canceled only by agreement or by five days' notice to the assured or ten days' notice to the loss payee or mortgagee. The policies also provided that the interest of the mortgagee should not be invalidated by any act or negligence of the mortgagor or owner of the property.

We approach the solution of the problem presented by the above contentions, fully recognizing the well-established rule that neither the interest of the assured nor the interest of the mortgagee in a policy of insurance can be canceled without notice to such interested party, as stipulated for in the policy, or by mutual agreement between the insurance company and such party. East Texas Fire Ins. Co. v. Flippen, 4 Tex. Civ. App. 576, 23 S. W. 550; Glasscock v. Liverpool, London & Globe Ins. Co. (Tex. Civ. App.) 188 S. W. 281; Hall v. Miller (Tex. Civ. App.) 268 S. W. 268.

■ A proper construction of the testimony therefore becomes determinative of this appeal. A careful examination of it discloses, in substance, that, about a year prior to the issuance of the first three policies, Beeler, the agent of the various companies, signified to Sweatt his willingness to write for him $5,000 insurance on the property destroyed. The undisputed evidence is that there was no intention upon the part of any of the interested parties to have more than that amount of insurance on the property. These and the facts heretofore stated lead us to the conclusion that, prior to the fire Sweatt and the agent fully agreed to the cancellation of the two original policies and the substitution of the one in suit for the original carried by the Commercial Union Assurance Company. This agreement was consummated prior to the expiration of the five days after the companies gave notice of their intention to cancel. However, the question of notice becomes immaterial in the decision of this case, since it was merely for the benefit of the assured or the loss payee. Dalton v. Norwich Union Fire Ins. Co. (Tex. Com. App.) 213 S. W. 230; Cooley's Briefs on Insurance, vol. 5, pp. 4582, 4613, 4614. On the receipt of notice of cancellation the assured elected to waive any rights he had thereunder and agreed to such cancellation and substitution. In such cases the waiver does not affect the liability of the company issuing a substitute policy. Cooley's Briefs, vol. 5, p. 4582.

■ Such agreement with the insurance agent was not conditional and we cannot so interpret the testimony. Further, it conclusively appears that the assured's rights attached under the new policies prior to the fire and at the time he received the notice of the cancellation and was informed by the agent that the substitute policies had been issued. The new arrangement was satisfactory to Sweatt, and his rights were in no way affected by the formal return of the original policies by the bank nor the date the new ones reached the manual possession of the agents of the bank. As said in Cooley's Briefs on Insurance, vol. 5, p. 5483, "A formal surrender of the policy by the insured when notified of the insurer's election to cancel, is not necessary to give effect to the cancellation."

■ We have thus far considered the rights of the assured independently of those of the bank. We now consider the testimony from a different standpoint, with the view of determining the bank's rights thereunder. In doing so, we think it unquestionably appears that the bank is at least in the attitude of a third party for whose benefit a contract had been made. This observation is made with specific reference to the substituted policy here in suit, which contract originated in and grew out of the negotiations between the assured and Beeler, the duly authorized agent of all the companies. It is a well-recognized rule of law that a person may enforce a contract made by others for his benefit. That is, a contract entered into by two parties for the benefit of a third may be enforced by the latter. 10 Tex. Jur. p. 478, § 278; Marr-Piper Co. v. Bullis (Tex. Com. App.) 1 S.W.(2d) 572; Allen v. Traylor (Tex. Com. App.) 212 S. W. 945; Waggoner v. Herring-Showers Lbr. Co. (Tex. Civ. App.) 288 S. W. 260; Employers' Casualty Co. v. Ponton (Tex. Civ. App.) 41 S.W.(2d) 147. In such a case it must appear, of course, that the contract was made for such third party's benefit and that he was the one intended to be benefited. 10 Tex. Jur. p. 483, § 280; House v. Houston Waterworks Co., 88 Tex. 233, 31 S. W. 179. A formal acceptance is not necessary in such a case, Waggoner v. Herring, supra, and a suit on such contract evidences such acceptance, Marr-Piper Co. v. Bullis, supra.

For the foregoing reasons the judgment of the trial court is correct and should be affirmed as to both plaintiffs.

However, if we should be mistaken in the conclusions above expressed, and if it could be said that the record does not warrant the judgment in behalf of the mortgagee bank, then we think that the record shows beyond question that the judgment should, with proper corrections, be affirmed as to the assured W. T. Sweatt. As noted, his agreement with the agent for the cancellation of the old policies and the substitution of the new was complete. Therefore, if for any reason the substituted policy never became effective as to the bank, nevertheless it became binding as to the assured under the authority of Hall v.

Miller (Tex. Civ. App.) 268 S. W. 268. There it was held that the insurance company could not cancel the policy as against the assured who paid in full therefor, without notice to her, but could do so as against the mortgagee, named loss payee, after notice to it and its agreement to the cancellation and acceptance of a substitute policy in another company. In the instant case it was the insured who agreed to the cancellation and substitution; and as to the case cited, it is here the other way around, but the principle is sound and applicable to the facts of this case. See, also, Cooley's Briefs on Insurance, p. 4600, and authorities there to the same effect.

We do not consider the opinion in Alliance Insurance Co. v. Continental Gin Company (Tex. Com. App.) 285 S. W. 257, relied on by appellant, in point. There the agent, being notified by the company to cancel the policy, was unable to locate the assured and notify him to that effect. So, without assured's authority the agent issued a policy in another company to take the place of the one already held by the assured. Hence, in that case, as correctly held by the court, the substituted policy sued on never became a binding contract. The assured knew nothing about it until after the fire and had never authorized the agent to accept notice of cancellation for him and effect other policies in lieu thereof. When he attempted to ratify it after the fire, there was no subject-matter for the contract. In the instant case there was subject-matter and a contract directly between the insurance company and the assured which inured to the benefit of the loss payee, who was at the time under no necessity of making a formal acceptance. 10 Tex. Jur. p. 483, § 280.

Since we are of the opinion that the judgment of the trial court rests on sound legal principles as first above discussed, the same will therefore be in all things affirmed.