**Calvin C. HUFFMAN, Appellant,**

v.

**John T. COX, Appellee.**

No. 10593.

Court of Civil Appeals of Texas.

Austin.

July 2, 1958.

Rehearing Denied July 30, 1958.

Terry Jacks, San Marcos, Robert C. Howell, Arthur Mitchell, Austin, for appellant.

Edward O. Wiley, Jr., San Marcos, for appellee.

ARCHER, Chief Justice.

This is a suit by a broker for a commission on the sale of a Management Contract with a mutual life insurance company. The trial was before a jury and submitted on Special Issues. The Trial Court rendered judgment that the plaintiff take nothing.

The appeal is founded on two points:

Point One: The Court erred in overruling appellant's motion for judgment and in entering a take nothing judgment, and to which Point One five subparagraphs are added and are to the effect that appellant is entitled to a judgment for $5,000 based on the answers of the jury to issues 1, 2, 3 and 5; that the evidence establishes that appellant, on the day following the agency contract contacted O. L. McFaddin as a buyer and who purchased the Manager's Contract; and that the jury found that appellant was the procuring cause of the sale within the five day time limit, or entitled to judgment without regard to the time limit.

Point Two: The Court erred in not setting aside the jury's answer to issue No. 4, denying any recovery of attorney's fees.

Appellant is engaged in the sale of Insurance Charters, Companies, and Management Contracts, and has been for a number of years, during which time he has sold some one hundred companies; and has a system of contacting prospective buyers and a medium of advertising companies listed with him for sale.

Appellee was the owner of a General Manager's Contract. On several occasions prior to October 31, 1956, appellee had sought to sell his contract through appellant. On October 30, 1956, appellant wrote appellee inquiring if the contract was still for sale.

On October 31, 1956, by a telephone call, according to appellant, appellee said that his contract was for sale and that he would take $10,000 net to him, all over that amount going to appellant as a commission. Appellant told appellee that he would set a price of $15,000 for the sale of the contract.

According to appellee's version, he called appellant and listed the contract for five days to expire at 5 o'clock at the close of business on November 5, 1956; that he had a deadline on some notes for borrowed money; that the company was worth $25,000 but that if a sale could be made in five days he would take $10,000 net.

Appellant wrote a number of prospects, one of whom was O. L. McFaddin of Lufkin, Texas. McFaddin came to see appellant in Austin on November 6, 1956, concerning the listing but appellant was in Alpine where McFaddin 'phoned him expressing a desire to purchase the contract. Appellant told McFaddin to contact appellee which he did by 'phone in San Marcos, and a meeting was had between McFaddin and appellee in Austin, and appellee told McFaddin that he would take $15,000 for the contract.

McFaddin returned to Lufkin and had one of his associates go to San Marcos to make an audit and investigation, and later sent some more of his men to close the deal, and the deal was closed, McFaddin paying appellee $4,500 on December 10, 1956, $8,000 on December 26, 1956 and $2,500 on March 14, 1957.

On November 16, 1956, appellant wrote appellee requesting information as to what results had been accomplished by appellant's efforts to that date, and in reply appellee stated that as a result of appellant's efforts an offer to trade an equity in a farm at Colorado City for the contract was made, which offer had been refused.

Early in January, 1957, appellant learned that the contract had been sold to McFaddin, and in verifying this, called McFaddin and was told by him that he had bought the contract.

On January 5, 1957, appellant wrote appellee, reciting events and activities in con-

nection with the sale of the contract, and made demand for his part of the consideration.

On March 25, 1957, appellee wrote the following letter to appellant:

"Mr. Calvin C. Huffman
"Austin, Texas
"Dear Cal:
"I have a check in my pocket which is supposed to represent the final transaction, however I will not cash it until I have secured certain releases which are now being prepared.
"I will call on you as soon as I have these.

"Sincerely,

"/s/ John T. Cox
"John T. Cox"

On April 25, 1957, appellee sent appellant a letter enclosing a check for $344.46 and reciting the details of the sale, such amount being 5% of $6,889.20, as a full and final commission on the sale of National Military Mutual Life Insurance Company. The letter is as follows:

"San Marcos, Texas
"April 25, 1957
"Mr. Calvin C. Huffman
"1015 Brazos St.
"Austin, Texas
                    "RE: Net Sale National
                    "Military Mutual
                    "Life Ins. Co.
"Dear Cal:

"Total received from O. L. McFadden to clear company assets with balance as purchase price of net business.

"$16,100.00  Total Gross
  9,210.80  Spent for Company to prove assets
 ─────────
  6,889.20  net sale price.

 $6,889.20  net sale price
   . 5%
 ─────────
 $ 344.46  Check enclosed
                    "Thanks Cal.
                    "s/s John T. Cox

"I hope to be in Market for a small company about August 1, 1957 and we will call you.
                    "John T.

"John:
"This was not the agreement. Better come over and talk to me about it before the deadline. Bring your check book.
                    "Cal Huffman."

There was a notation on the check "For full and final commission on sale of Nat. Mil. Mut. Life Ins. Co."

It may be observed that in none of appellee's correspondence with appellant did appellee contend that he did not owe the commission because of the five day limitation.

Appellant testified that Mr. Cox employed him to set this company up, to organize it in 1949, and detailed the plans for the organization of the company, and the listing of the company for sale on October 31, 1956, and the subsequent sale; that he had not been paid and had employed attorneys to collect the money, and had agreed to pay them a reasonable fee; that a fee of $2,500 would be a total fee.

The witness testified further:

"Q. Mr. Huffman, at the time Mr. Cox called you listing this Company for sale, did he give you a 5-day limitation for the sale of this Company?

"A. No. Mr. Cox did not give me a 5-day limitation."

The witness testified that the first time he heard of the five day limitation period was in January, 1957, after the company had been sold and that he would not have accepted the agency under any such indefinite commitment.

O. L. McFaddin testified as to the receipt of a letter from Huffman and of his later activities, and a meeting with Cox, and that the selling price of the company was $15,000, and of a written offer of $15,000 to Cox, under date of December 8, 1956, and that at no time did Cox say anything about changing the price, and of the final purchase of the company, and identified a copy of the contract of sale.

Appellee Cox testified as to the organization of the company, and that he had a Manager's Contract, and was acquainted with Huffman, who had been employed as an attorney on two or three occasions for the purpose of organizing the company, and of the preparation of the charter, by-laws, etc., and gave further testimony as to business relations with Huffman in an effort to sell the company during the years of 1954 and 1955, and of the receipt of the letter dated October 30, 1956 inquiring if the company was still for sale and of a 'phone call to Huffman on October 31, 1956 in which he told Huffman that if he could get a sale within five days he, Cox, would turn the company over to him for $10,000 net to seller, and detailed statements and conditions surrounding the sale of the company, and of the subsequent sale to McFaddin.

The case was submitted to the jury on special issues. The jury found in answer to Special Issues Nos. 1, 2, and 3 that Huffman was the procuring cause of the sale and that Cox agreed to pay Huffman all sums of money over $10,000 received for the sale of the Manager's Contract; that Cox received $15,000 from McFaddin for his contract.

The jury did not allow any attorney's fees in its answer to Special Issue No. 4.

In answer to Special Issue No. 5 the jury found that Cox placed the General Manager's Contract with Huffman for sale for a period of five days from October 31, 1956.

In answer to Special Issue No. 6 the jury found that the conduct of Cox in accepting the buyer procured by Huffman was not a waiver of the five day limitation.

Special Issue No. 7, inquiring if Huffman was the procuring cause of the sale within the five day period, submitted conditionally upon an affirmative answer to Special Issue No. 5, which inquired if the listing was for a five day period which the jury found that it was so limited, was not answered and complaint is made to such failure.

Based on the verdict, the Court entered judgment that Huffman taking nothing and

it is from this judgment that the appeal is made.

We have set out in some detail the pertinent facts as testified to and it is apparent that the prime question, if not the controlling question in this appeal, is that of a limited listing.

Appellant takes the position that he is entitled to a judgment for $5,000 without regard to the time limitation found to exist upon the contract of agency, because the agent was found to be the procuring cause of the sale, having found a buyer agreeable to seller and who received the consideration from the buyer.

Appellant cites the case of Keener v. Cleveland, Tex.Com.App.1923, 250 S.W. 151, quoting Ruling Case law, Book 4, p. 320, which cites 44 L.R.A. 612; 7 Tex.Jur. 403 et seq.; Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 148 A.L.R. 1320.

It may be presumed that the Court rendered judgment for appellee, because of the allegation of and the finding by the jury that the listing was limited for a period of five days, and was to be consummated within such limited period.

Both parties are experienced insurance men and both knew and understood that in a sale of this kind that more than five days would be required to complete such sale.

Appellee continued to deal with McFaddin for some weeks subsequent to October 31, 1956, and finally effected a sale, and knew that Huffman had presented McFaddin as a prospective purchaser. It then would appear that appellee is liable for a commission.

Marr-Piper Co. v. Bullis, Tex.Com.App., 1 S.W.2d 572; Hawkins v. Culbertson Co., Tex.Civ.App., 48 S.W.2d 345, er. dism.

In Dickson v. Kelley, Tex.Civ.App., 193 S.W.2d 256, 258, no writ history, it was held:

"The terms of the contract relative to its duration are repeated: 'would sell

later, but with possession only if sold within 15 days.' As we construe the contract, the fifteen days stipulation refers to the time of delivery of possession rather than to the duration of the listing. But if we are mistaken in this construction, we think the appellants' pleadings and the evidence offered by them raise the issue of estoppel of appellees to urge the termination of the agency."

Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884.

"Where there is indefiniteness or uncertainty in a contract, they may be obviated or removed by events occurring before the time for performance arrives, or by the acts of the parties under the contract, as where they have acted upon and executed it according to their understanding and intentions." 10-A Tex.Jur., par. 154, p. 302.

Appellee contends that upon receipt of the letter dated October 30, 1956, that on October 31, 1956, he called appellant and listed the contract for sale for a limited period of five days from October 31, 1956 for $10,000 cash, and that after the five days the price would be $15,000 to him; that time was important and that appellant did not complete the performance of the sale, and that the listing, being limited, constituted no more than a mere offer to enter into a unilateral contract, and cites a number of cases such as Patton v. Wilson, Tex. Civ.App., 220 S.W.2d 184, err. ref. N.R.E.; Holmes v. Holik, Tex.Civ.App. 238 S.W.2d 260, writ dism., which are generally to the effect that a listing can be limited and restricted unless there has been performance or part performance by the broker.

Air Conditioning, Inc., v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422, 425, is cited by both parties and holds:

"Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 296, 195 S.W. 848, is the leading authority in this State relative to the rights of a party to recover a commission for the sale of real estate. Chief Justice Phillips, in rendering the opinion in that case for the Court, said:

"'It is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if *while it is in force,* he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right.'"

We believe that as a matter of law that appellant was entitled to a judgment under the evidence and the answers of the jury to Special Issues Nos. 1, 2 and 3.

Keeler v. Cleveland, supra.

Appellee admits the listing of the contract with appellant, the subsequent sale to Mc-Faddin, and that a commission is due appellant, but as set out in the letter transmitting the check for $344.46.

If the contract of listing is of doubtful meaning with respect to the time limitation, then:

"* * * it is proper to resort to settled rules of construction to determine its true meaning. One of such rules is that the language used will be construed in the light of the facts and circumstances surrounding the parties when the contract was made. 10 Tex. Jur. p. 290. Another such rule is 'that

great, if not controlling, weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves.' James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 561." Austin Stone Industries v. Capitol Powder Company, Tex.Civ.App., 290 S.W.2d 689, 692, er. ref., N.R.E.

■ There is no question but that Huffman produced McFaddin as a purchaser and that a sale was in fact made on terms satisfactory to appellee, and we believe that appellant earned the commission.

7 Tex.Jur., par. 54, p. 444; Anderson-Berney Bldg. Co. v. Swan, Tex.Civ.App., 133 S.W.2d 269, dism. cor. judgm.; Marr-Piper Co. v. Bullis, supra; Dickson v. Kelley, supra.

Since we are reversing the Trial Court's judgment and rendering judgment for appellant, we then consider the appellant's point complaining of the failure of the Trial Court to allow reasonable attorney's fees.

Appellant in his petition sought an attorney's fee of $2,500 and appellant testified in part as follows:

"Q. Mr. Huffman, did Mr. Cox ever pay you the money requested in that letter? A. No, sir, Mr. Cox has not paid me anything.

"Q. Have you employed attorneys to collect this money for you? A. Yes, I have employed three attorneys present in the Courtroom.

"Q. Did you agree to pay these attorneys a reasonable fee? A. I agreed to pay them a reasonable and regular fee for the complete conduct of the law suit.

"Q. Considering all the work that has been done in this case, what do you consider the reasonable attorney's fee

to be? A. Attorneys usually, as I am told and I have charged in the past, charge anywhere from $250.00 to $350.-00 on the date of trial; prior to that time the fees run depending on the work involved, $200.00 or $300.00 additionally.

"Q. As a total fee, what do you think a reasonable fee should be in this case? A. I presume the work already done, depositions taken and the fact we are now on trial, which may take one or more days, possibly $2500.-00 may be the total."

In response to an issue inquiring what sum of money do you find from a preponderance of the evidence is a reasonable fee for the plaintiff's attorney in this suit, and in reply the jury answered none.

We believe that plaintiff by his pleadings alleged a cause within the meaning of Article 2226, Vernon's Ann.Civ.St., and had a valid claim for personal services, and that the evidence supported such claim.

■ Smith v. Texas Co., Tex.Com.App., 53 S.W.2d 774, Section B, holds that there is presented a fact issue, and that the Court of Civil Appeals is without authority to determine such fact issue.

■ In Craft v. Netherton, Tex.Civ. App., 276 S.W.2d 855, no writ history, it was held that the services of a real estate agent were personal services under Art. 2226, V.A.C.S.

The judgment of the Trial Court is reversed and judgment is here rendered for appellant for $5,000 and since we do not have the authority to fix an attorney's fee the judgment denying such is reversed and remanded to the Trial Court with instructions to fix a reasonable fee.

Reversed and rendered in part and in part reversed and remanded.