## CITIZENS REAL ESTATE & MORTGAGE CO., Inc., et al. v. SHARP.

### No. 6576.

Court of Civil Appeals of Texas. Texarkana.

Feb. 7, 1952.

B. F. Edwards, Pat Beadle, Clarksville, for appellants.

Moore & Moore, Paris, Austin Guest, Clarksville, for appellee.

LINCOLN, Justice.

This appeal is from a judgment of the district court of Red River County after a jury verdict. The suit was brought by appellant Citizens Real Estate and Mortgage Company, Inc., of Dallas County, against appellant Burk Baker, Jr., and appellee, H. A. (Henry) Sharp. By warranty deed dated August 9, 1948, Sharp and wife sold and conveyed to Burk Baker, Jr., 1,317.59 acres of land in Red River County, wholly on credit, payments extending to January 1, 1969. At that time the mortgage company owned a tract of 420 acres, known as Silver City Farm, in Red River County, and an additional tract of 1410 acres in said county, known as the Blakney Farm. By instrument of writing of same date, the mortgage company leased the Silver City Farm and the Blakney Farm to appellant Burk Baker, Jr., for the term beginning on the date of said lease contract and expiring December 31, 1951. Simultaneously with the execution and delivery of the deed from Sharp to Baker, Jr., above mentioned, the two parties last mentioned entered into what is referred to as a cattle operating contract. Since the suit was brought and defended on the basis of that contract, we need to set forth some of the terms necessary to a determination of the case. The numbering of the paragraphs corresponds to the numbering in the contract. The provisions are as follows:

(1) Cattle were to be turned on all of the above lands except that which was used for cultivation and for hay meadows. The cattle were to be placed on the land under the terms of the agreement and were to be under Sharp's direction.

(2) "All the said pasture land shall be put and kept under fences which are ade-quate to hold cattle, which fences shall be kept in a good state and condition of repair by Burk Baker, Jr., at his cost and expense, * * *."

(3) Sharp agreed to place 50 head of cattle on the Sharp land, 50 head on the Silver City place, and 200 head on the Blakney farm, to be purchased and paid for by him, "and as many more cattle as in his judgment the land will accommodate properly."

(4) "Burk Baker, Jr., agrees as expeditiously as possible to render all the above mentioned land and tracts of land suitable for pasturing the cattle, and H. A. Sharp agrees as expeditiously as possible to place cattle thereon, in accordance with the terms of this agreement. * * * As to this portion of this agreement time is of the essence."

(6) "The cattle contemplated hereby to be purchased by Sharp and placed on said land are to be handled as follows:

"(c) H. A. Sharp is to be in charge of and buy all the cattle placed on the land, and is to sell all the cattle sold; and his judgment and decision with respect to the buying of cattle (subject to his obligation to stock said land), and the selling of the cattle, shall be final and conclusive, in the absence of fraud;

"(d) H. A. Sharp's agreement to purchase, stock and pasture a certain number of cattle is conditioned upon his judgment being that the grass and other conditions of the land justify the pasturing of that many cattle; but if the condition of the land is such as to justify it, H. A. Sharp shall during the period of this agreement keep on all the said places a total of not less than three hundred (300) head of cattle as much of the time as possible, allowances being made for temporary depletion because of sales.

"(e) Not only the times of sale, and the amount sold and the number purchased, but also the cost thereof and the price therefor shall be determined by H. A. Sharp; but upon sales being made he shall, in each instance, furnish Burk Baker, Jr., with tickets showing what the cattle brought.

"(f) The actual handling of the cattle shall be done by Burk Baker, Jr., but at all times under the control and direction of H. A. Sharp; and Burk Baker, Jr., agrees to employ and pay all labor necessary to properly look after and care for said cattle, failing in which H. A. Sharp may do so charging the expense thereof against Burk Baker, Jr.'s share of the profits upon the cattle being sold; and if at any time H. A. Sharp is of the opinion either that Burk Baker, Jr., or anyone employed by him is failing adequately to look after, handle and care for the cattle H. A. Sharp may himself assume such responsibility (at Burk Baker, Jr.'s cost and expense).

"(g) As heretofore stated, all expenses of caring for the cattle shall be borne by Burke Baker, Jr., and not be deducted as an item of expense in determining profits and net income; and as well all feed bills, provided, Burke Baker, Jr., shall not be responsible for feeding in the winter more than one-half ($\frac{1}{2}$) of the cattle pastured in the preceding spring or summer."

There are other provisions of the cattle operating contract which may be referred to when pertinent to this opinion. The net profits were to be divided three-fourths to Baker, Jr., and one-fourth to Sharp. While the original cattle contract bears date of August 5, 1948, the evidence shows that it was in fact executed on August 9, and that there were amendments made to it on August 19, none of which are material to the decision. By still another instrument of writing, also bearing date August 9, 1948, the mortgage company and Baker, Jr., entered into a contract based in part upon the cattle operating contract last above mentioned. This contract was referred to throughout the trial as "a side agreement" between the mortgage company and Baker, Jr. Under its terms the mortgage company agreed to pay all expenses incurred by Baker, Jr., under the cattle operating contract, and he was to draw a salary of $200.00 per month from the mortgage company. As consideration to the mortgage company for such advances, it was to receive one-half of the net profits to be earned by Baker, Jr., under the cattle operating contract. Other terms related to operation of cultivated land and meadow land on the various tracts, accounting, etc., between Baker, Jr., and the mortgage company.

The president of the mortgage company was J. D. B. Baker, father of Burk Baker, Jr., and Burk Baker, Jr., was secretary and treasurer of the corporation.

The evidence discloses that 97 or 98 head of cattle were placed on the farms after the date of the contracts, and were sold. The mortgage company filed its suit in the court against Baker, Jr., and Sharp on April 16, 1949, and attached to and made the foregoing contracts parts of its petition. It alleged a breach of the cattle operating contract by the defendants and each of them by failing to place and keep any cattle on the lands as provided therein, except 97 head. It alleged that it had advanced sums of money as expenses to Burk Baker, Jr., and sued generally for prospective profits had the contract been faithfully carried out to the end of its term. The total amount sued for was $52,101.21. Burk Baker, Jr., answered admitting practically all of the allegations of the plaintiff mortgage company's petition, and filed a cross-action against Sharp in which he also sued for actual damages for a breach of the contract on the part of Sharp in the sum of $49,100.00. The breach alleged was the same as that alleged by plaintiff.

Sharp answered by denials, general and special, to both the petition of the mortgage company and the cross-action of Baker, Jr., and alleged a breach of the contract by Baker, Jr., in failing to build the fences and to make the land suitable for pasturage, as provided for in Sections (2) and (4) of the cattle operating contract. He also brought in J. D. B. Baker as third party defendant, and his prayer was for actual damages against the plaintiff and against Burk Baker, Jr., and J. D. B. Baker for actual damages in the sum of $15,000.00 and for exemplary damages $60,000.00. J. D. B. Baker answered by special exceptions and general denial.

In response to special issues the jury found the following facts:

(1) H. A. Sharp failed to furnish as many cattle under the cattle operating

agreement as a reasonably prudent man similarly situated would have furnished prior to the filing of the suit.

(2) Sharp failed to act as a reasonably prudent man similarly situated would have acted in waiting until April 7, 1949, to purchase other cattle under the cattle operating agreement.

(3) Sharp did not act in good faith in failing to put more cattle on the lands covered by the cattle operating contract than he did put on the land prior to the filing of the suit.

(4) Sharp had knowledge prior to the filing of the suit of the execution of the side agreement between Baker, Jr., and the mortgage company.

(5) Burk Baker, Jr., within a reasonable time after the execution of the cattle operating contract, did not put and keep the pasture lands under fences adequate to hold cattle prior to the time of filing suit.

(6) Burk Baker, Jr., expended $4,204.92 in the construction and maintenance of fences on the Blakney farm and Silver City farm after the execution of the cattle operating contract in order to make the land suitable for pasturing cattle.

(7) The parties to the cattle operating agreement would have realized as a net profit under the terms of the contract the sum of $32,010.00 if the contract had been fairly and reasonably carried out by all the parties to it.

The motions of the mortgage company and Burk Baker, Jr., for judgment on the verdict of the jury were overruled by the court, and the motion of Sharp for judgment based on the verdict of the jury denying a recovery to the plaintiff, or to Burk Baker, Jr., was granted. Accordingly, judgment was entered denying all parties any recovery against any other party, to which action the plaintiff mortgage company and the defendant Burk Baker, Jr., excepted, gave notice of appeal and filed appeal bonds and are here as appellants. The defendant Sharp did not except to the judgment nor give notice of appeal.

The appellant mortgage company brings forward only two points. Point No. 1 is that "The court erred in overruling plaintiff's motion for judgment based upon the verdict of the jury"; and Point No. 2, "The court erred in rendering judgment upon the verdict of the jury that the plaintiff take nothing." By these two points, as well as by the entire record, it appears that the court in entering judgment as far as the mortgage company is concerned did so upon the verdict of the jury.

Before the mortgage company would be entitled to judgment against Sharp for a breach of the contract on Sharp's part, some contractual relationship between the corporation and Sharp must be alleged and proved. 17 C.J.S., Contracts, § 518, p. 1112; Hardin Lumber Co. v. Shepherd, Tex.Civ.App., 40 S.W.2d 215, writ dism. Subject to qualifications the American courts recognize certain exceptions to the rule, one exception being that suit may be maintained for a breach by one not formally a party to a contract where the contract was made for his benefit. 17 C.J.S. Contracts, § 519c, p. 1121; Ætna Ins. Co. v. Texarkana National Bank, Tex.Civ.App., 60 S.W.2d 251, writ dism. But it is not claimed in this case that the cattle operating contract was made for the benefit of the mortgage company, and there is neither pleading nor evidence on that ground. The only allegation made by the mortgage company is in effect that Sharp knew of the "side agreement" between the mortgage company and Baker, Jr. The only special issue bearing upon the question was that submitted as Issue No. 4, in response to which the jury found that Sharp had knowledge of the execution of the "side agreement." Mere knowledge of such agreement is not enough. There is no jury finding, and no evidence upon which a finding might be made, that Sharp owed any duty to appellant mortgage company under any contract mentioned. The court, therefore, correctly overruled the mortgage company's motion for judgment against Sharp on the verdict of the jury, and there was nothing left for the court to do but to enter judgment that the appellant mortgage company take nothing as against Sharp. As far as the two points assert error in the action of the

court in overruling the mortgage company's motion for judgment against Sharp, and in entering judgment that the appellant take nothing against him, said two points are overruled.

Appellant mortgage company has also appealed from the judgment denying it a recovery against appellant Burk Baker, Jr., and claims error under the same two points above stated. Its complaint against Baker, Jr., is the same as that against Sharp, that is, that Baker, Jr., and Sharp breached the cattle operating contract by failing to place more than 97 head of cattle on the lands. The mortgage company did not file nor present a motion for new trial. The verdict was returned September 6, 1950. The term of court would have ended on September 9, but was extended to and through October 23, 1950. The judgment was entered on September 30, 1950. It was thus rendered and entered more than five days before expiration of the time to which the term of court had been extended for completion of the trial. Under Rule 324, Texas Rules of Civil Procedure, a motion for new trial in behalf of appellant mortgage company was necessary to authorize consideration by the appellate court of said appellant's Point No. 2, in its appeal from the judgment denying recovery against Burk Baker, Jr.

However, Rule 324 provides that—"An assignment in a motion for new trial shall not be a necessary prerequisite to the right to complain on appeal of the action of the court * * * in overruling a motion for judgment for appellant on the verdict." This provision would ordinarily authorize us to consider appellant mortgage company's Point No. 1 in its appeal against Burk Baker, Jr. But a mere assignment or statement of a point of error is not enough to authorize consideration by an appellate court. Point No. 1, supra, standing alone is too general. Appellant mortgage company has not by statement of the facts nor by argument pointed out any error of the trial court in refusing to grant said appellants' motion for judgment against Burk Baker, Jr., on the verdict of the jury. Its entire case here has been presented against Sharp only. As the record and briefs appear here, there does not seem to be any intention or desire on the part of appellant mortgage company to secure judgment against Baker, Jr., without a concurring judgment against Sharp.

Appellant mortgage company's suit against Sharp and Baker, Jr., was entirely for alleged breach of the cattle operating contract in not placing more than 97 or 98 head of cattle on the lands. The contract did not obligate Baker, Jr., to do that, it was Sharp's obligation, subject to its terms giving judgment and discretion to Sharp. It was Baker, Jr.'s obligation to build and maintain the fences so as to hold the cattle. The jury found he breached that provision, but the mortgage company does not complain about that, neither by pleading nor on appeal. The "side agreement" did not carry any terms whereby Baker, Jr., warranted or guaranteed to the mortgage company that Sharp would faithfully perform his part of the cattle contract. It did not obligate Baker, Jr., to repay advances except out of prospective profits. The president of the mortgage company must have known the hazards in an operation of that kind and was evidently willing to make an investment of "risk capital," to his son.

Appellant mortgage company's motion for judgment did not set forth the amount for which it thought judgment should be entered against either Sharp or Baker, Jr. It has not done so on this appeal. We therefore conclude that the mortgage company has not shown any error of the trial court in its judgment denying recovery to the mortgage company against Burk Baker, Jr.

The foregoing disposes of the appeal of appellant Citizens Real Estate and Mortgage Company, Inc.

We now consider the appeal of Burk Baker, Jr. His claim by pleading and evidence was against Sharp only. It is his contention that Sharp breached the cattle operating contract by not placing a sufficient number of cattle on the pasture lands. Appellee Sharp contends that the question of what a reasonably prudent man would have done (Special Issues Nos. 1 and 2), and of Sharp's lack of good faith (Special

Issue No. 3), were not proper issues under the pleadings and the facts proved. Under the terms of the cattle operating contract, Sharp is charged with the obligation and duty of buying and paying for the cattle. Primarily it was contemplated that as many as 50 head would be placed on the Sharp land, 50 head on the Silver City Farm and 200 on the Blakney farm. However, it was also recognized that the grazing capacity of the various lands and the season of the year would have a determining influence on the number of cattle to be pastured. Sharp was given the discretion and judgment to determine how many the pasture lands would carry and this involved the number which should be placed thereon during the various seasons. Appellee's contention, therefore, is that the real issue raised by Burk Baker, Jr.'s suit as cross-plaintiff was whether or not Sharp had abused his discretion by not placing sufficient number of cattle on the lands; that instead, however, he seeks recovery upon a claim not alleged, and not involved in the contract sued upon, to-wit, what a reasonably prudent person would or would not have done under similar circumstances. We are inclined to agree with appellee's contention in this respect. However, we may rest the decision of appellant Burk Baker's claim on another finding of the jury. In response to special issue No. 5 the jury found that Baker, Jr., within a reasonable time after the execution of the cattle operating contract with Sharp, had not put and kept the pasture lands under fence adequate to hold the cattle prior to the time of filing of the suit. This constituted a breach of the contract on part of Baker, Jr. He is, therefore, in no position to rely upon a breach of the contract on the part of appellee Sharp, proximately causing any loss to him. "It is * * * elementary that a party to a contract who is himself in default cannot maintain a suit for its breach." Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065, 1068. Appellant Burk Baker, Jr.'s points are, therefore, respectfully overruled.

The appellee Sharp urges "error of the court in failing to award him damages against the appellants pursuant to the jury's verdict." He rests his claim for damages upon the verdict of the jury in response to Special Issue No. 5, supra. The contract definitely placed the primary obligation on Baker, Jr., to build and maintain adequate fences to hold the cattle. His failure to do so constituted a breach of the contract in that respect. But the cattle operating contract also gave to Sharp supervision over the care and handling of the cattle should Baker, Jr., fail to do so. Sharp was given the privilege of performing that obligation and assuming that responsibility at Baker, Jr.'s cost and expense. See Par. (6) (f), supra. It was thus Sharp's duty to see that the fences were put in proper condition and kept in sufficient repair to contain the cattle, and it was his duty to minimize the damages which might accrue to him by Burk Baker, Jr.'s failure in that respect. 13 Tex. Jur., p. 99, et seq. No issue was presented and none requested calling for a jury finding as to the damages suffered by Sharp as a result of such failure. He gave no excuse for his own failure to act. The jury found that Sharp did not act in good faith in his failure to put more cattle on the lands than he did place thereon. Special Issue No. 3, supra. His failure to "furnish" more cattle, his lack of good faith in such failure, and his further failure to avail himself of the privilege of putting the fences in proper condition to hold the cattle, were sufficient facts to authorize the trial court to conclude that Sharp himself breached the contract. Such conclusion is implicit in the judgment rendered. Under these circumstances the court correctly denied him any recovery against Baker, Jr. Gulf Pipe Line Co. v. Nearen, supra. As for his claim for damages against J. D. B. Baker, there is no basis whatever for any judgment for damages, either actual or exemplary, and no issue was submitted upon which such damages could be predicated. Furthermore, he has not appealed from the action of the court in denying him recovery, and J. D. B. Baker is not a party to this appeal.

It is our conclusion that no error of the trial court has been shown, and the judgment of the district court is affirmed.